William Ryan DIXON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000682–MR.

Supreme Court of Kentucky.

May 22, 2008.

Rehearing Denied Sept. 18, 2008.

As Corrected Oct. 6, 2008.

Euva D. May, Assistant Public Advocate, Appellate Division, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

### AFFIRMING

Opinion of the Court by Justice MINTON.

## I. INTRODUCTION.

A circuit court jury convicted William Dixon of first-degree assault, first-degree rape, and first-degree robbery. He contends in this appeal that we must reverse his convictions because the trial court erred by (1) failing to instruct the jury on facilitation to commit first-degree robbery and facilitation to commit first-degree rape and (2) failing to dismiss the first-degree assault charge as violative of the prohibition against double jeopardy when the same serious physical injury supports both the first-degree assault charge and the first-degree rape charge. We reject both of Dixon's arguments and affirm the convictions. In doing so, we overrule our prior case law and hold that the prohibition against double jeopardy is not violated when a defendant is convicted of first-degree assault and first-degree rape (involving a serious physical injury to the victim), even if the same serious physical injury to the victim is used to support each conviction.

## II. FACTUAL AND PROCEDURAL HISTORY.

Jane Doe [1] was working alone at Superstar Video when Wayne Murphy entered the store. Murphy wandered into a back

---

**1.** Although the name of the victim is utilized freely in the parties' briefs, in order to protect her privacy, perhaps belatedly, we will refer to the victim only as "Jane Doe."

room of the store, and Doe told him he was not allowed there. Murphy eventually left the store, and Dixon entered shortly afterward. After Dixon selected a video to rent, Doe told him that the store was running a promotion that would entitle him to get another video for free. Dixon said he wanted to get his friend to help select the extra movie. As Dixon went out the door, Doe told him to call her when he had made his selection because she was working elsewhere about the store.

Doe was down on her hands and knees cleaning a shelf when Murphy struck her in the back of the head with a hammer. Murphy then grabbed Doe's foot and started dragging her toward the back of the store. Murphy called for Dixon to help him. Doe testified that Dixon helped Murphy drag her into the back room. Murphy then sent Dixon to remove the money from the cash register. After Dixon left the back room, Murphy demanded that Doe open the safe. When Doe told Murphy that there was no money in the safe, Murphy hit and kicked her.

Dixon returned to the back room; and, according to Doe, he and Murphy removed Doe's clothing. Dixon held Doe in a chair while Murphy raped her. Murphy then knocked Doe to the floor and stood over her, brandishing a hammer. Dixon told Murphy to "hurry up and get it over with." Murphy then told Doe to "kiss her ass goodbye" and struck her on the head with the hammer.

The crime was eventually discovered when a customer entered the store and saw Doe emerge from the back room naked and bloodied. Doe was taken to a local emergency room with two head wounds: a complex depressed skull fracture and a gaping laceration on the back of her head.

The investigation quickly focused on Dixon because the store's computer recorded him as the last person to rent a video. The grand jury ultimately indicted Dixon on one count of first-degree assault, one count of first-degree robbery, and one count of first-degree rape. The indictment specifically alleged that Dixon had committed the assault by "intentionally causing serious physical injury to another person by means of a deadly weapon or dangerous instrument" and that he had committed the Class A felony offense of rape in the first degree by "engaging in sexual intercourse with another person by forcible compulsion and wherein the other person received a serious physical injury."

The jury convicted Dixon of first-degree assault of Doe by intending to cause serious physical injury to her by using a dangerous instrument, of first-degree robbery, and of first-degree rape under an instruction that required the jury to find beyond a reasonable doubt that Doe "received a serious physical injury as a consequence" of Dixon's actions.

In accordance with the jury's recommendation, the trial court sentenced Dixon to twelve years' imprisonment for the assault, fifteen years' imprisonment for the robbery, and twenty years' imprisonment for the rape, all of which the trial court ordered to be served consecutively, for a cumulative total of forty-seven years' imprisonment. Dixon then filed this matter-of-right appeal.[2]

## III. ANALYSIS.

Dixon raises two issues. First, he contends that the trial court erred when it refused to instruct the jury on facilitation to both robbery and rape. Second, he contends that his convictions for rape and assault violate the prohibition against dou-

---

2. See Ky. Const. § 110(2)(b).

ble jeopardy because the same serious physical injury underlies each conviction. We reject both of Dixon's arguments.

## A. *Evidence Did Not Support Additional Criminal Facilitation instructions.*

■ The trial court instructed the jury on criminal facilitation to first-degree assault but denied Dixon's request to instruct on criminal facilitation to rape and robbery. Instead, the trial court instructed the jury that they could find Dixon guilty of first-degree rape or first-degree robbery under a complicity theory.[3] Dixon contends that the trial court's refusal to give the other facilitation instructions was error because the evidence presented could have led the jury to believe that Dixon merely provided an opportunity for Murphy to rape Doe and rob the video store without taking an active role in those offenses. We disagree.

■ The statutory framework for the offense of criminal facilitation appears in KRS 506.080. Subsection (1) of that statute provides that "[a] person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." As we have explained, the chief difference between complicity and facilitation is intent: "[u]nder the complicity statute, the defendant must intend that the crime be committed; under the facilitation statute, the defendant acts without such intent."[4] Thus, we have described facilitation as "reflect[ing] the mental state of one who is 'wholly indifferent' to the actual completion of the crime."[5]

■ When confronted with a situation in which a defendant requests an instruction on facilitation, a trial court must consider that "[a]n instruction on facilitation as a lesser-included offense of complicity 'is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.'"[6] We reject any notion that a facilitation instruction must always accompany a complicity instruction.[7] Rather, a lesser-included instruction, such as facilitation,[8] may be given "only when supported by the evidence."[9] And since facilitation and complicity require different mental states, an instruction on facilitation is necessary only if the evidence supports the existence of both mental states.[10] Or, despite Dixon's apparent argument to the contrary, a

---

3. Kentucky Revised Statutes (KRS) 502.020 governs complicity. Under that statute, a defendant is guilty of an offense committed by another person if the defendant, *inter alia,* "[a]ids, counsels, or attempts to aid such person in planning or committing the offense" KRS 502.020(1)(b).

4. *Thompkins v. Commonwealth,* 54 S.W.3d 147, 150 (Ky.2001).

5. *Perdue v. Commonwealth,* 916 S.W.2d 148, 160 (Ky.1995).

6. *White v. Commonwealth,* 178 S.W.3d 470, 490 (Ky.2005), *quoting Skinner v. Commonwealth,* 864 S.W.2d 290, 298 (Ky.1993).

7. *Id.*

8. *Commonwealth v. Day,* 983 S.W.2d 505, 509 n. 2 (Ky.1999) ("Generally, criminal facilitation is a lesser included offense when the defendant is charged with being an accomplice to an offense, not the principal offender.").

9. *White,* 178 S.W.3d at 490.

10. *Id.*

defendant is not entitled to a lesser-included offense instruction, such as facilitation, simply because the defendant wants the jury to have the option to convict the defendant of a less serious offense.

On the trial record before us, there was no evidence to support a facilitation instruction because there was no evidence that Dixon was wholly indifferent to the commission of the rape and robbery crimes. On the contrary, Doe testified that Dixon helped Murphy drag her into the back room and that Murphy told Dixon to go to the front of the store to get the money from the cash register. Doe further testified that when she briefly escaped from the back room, she saw Dixon behind the counter at the cash register. Doe also testified that money she had placed in the register was gone after the robbery. Although Dixon contends that his taped statement to the police, which was played for the jury, was sufficient to support giving the facilitation instructions, Dixon has not cited to any *specific* portion of the record to contradict Doe's eyewitness testimony.[11] Additionally, Dixon's statement, upon which he so heavily relies, contains an admission that he knew beforehand that Murphy was going to rob the

video store. So the jury could have believed Doe's testimony, which would reasonably lead to the inference that Dixon took the money from the cash register and was, therefore, an active participant in the robbery. This inference could be consistent with Dixon's own admission that he knew of the planned robbery. On the other hand, the jury could have disbelieved Doe's testimony, which logically would have led to Dixon's acquittal on the robbery charge. Accordingly, the trial court did not err in refusing to instruct the jury on facilitation to first-degree robbery because there was no evidence that would support a reasonable inference that Dixon was wholly indifferent to the commission of the robbery.[12]

Similarly, the evidence regarding the rape charge would support only an acquittal or a conclusion that Dixon was an active participant in the rape. Doe testified that Dixon helped drag her to the back room and held her down while Murphy raped her. Dixon, again, has not pointed to any *specific* portion of the record that would refute Doe's testimony. Regardless, Dixon's statement to the police, upon which he leans heavily, contains Dixon's contention that he did not have

---

11. *See* Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(iv) (requiring a party to make "ample references to the *specific* pages of the record, or tape and digital counter number in the case of untranscribed videotape or audiotape recordings . . . .") (emphasis added). In the case at hand, Dixon's reply brief points only to nearly two hours of trial testimony to support his contention that his statement to the police entitled him to facilitation instructions. Such a citation inviting us to view two hours of testimony to find Dixon's point is insufficiently specific.

12. *See, e.g., White,* 178 S.W.3d at 490–91 ("The evidence presented at trial supported only two theories: that Appellant was an active participant in planning the crime and intended that it be carried out, or that he was

an innocent bystander who happened to be present when some of the instruments used in the crime were acquired. There was no evidence of a middle-ground violation of the facilitation statute. The jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios.' *Thompkins,* 54 S.W.3d at 151. Therefore, we conclude that the trial court was correct in refusing Appellant's request for a facilitation instruction.").

This case is distinguishable from *Webb v. Commonwealth,* 904 S.W.2d 226 (Ky.1995), relied upon heavily by Dixon, because, among other matters, Dixon's alleged participation in the crimes at issue are far greater and more active than the passive conduct of the defendant in Webb.

prior knowledge of the rape and that he had already left the store when the rape occurred. Therefore, the only proper conclusions a jury could have reached would have been to have believed Doe's damning testimony, which would have led to Dixon's conviction, or to have believed Dixon's claim of innocence, which would have led to Dixon's acquittal. Thus, the trial court did not err by refusing to instruct the jury as to facilitation to commit first-degree rape.[13]

### B. Double Jeopardy Does Not Bar Assault and Rape Convictions.

#### 1. General Double Jeopardy Principles.

Section 13 of the Kentucky Constitution, usually referred to as the double jeopardy clause, states that "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb...."[14] Dixon contends that his simultaneous convictions for rape and assault violate the prohibition against double jeopardy because the same serious physical injury was used as an element of both the assault and the rape convictions. We disagree.

The seminal double jeopardy case is *Blockburger v. United States.*[15] In *Blockburger*, the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[16]

Although we once departed from using the *Blockburger* test, the resulting confusion moved us to state emphatically that we would "henceforth" rely upon *Blockburger* to resolve double jeopardy claims.[17] And the *Blockburger* test has found favor with the General Assembly since KRS 505.020,[18] enacted in 1974, is a legislative codification of the *Blockburger* test.[19] So to resolve Dixon's double jeopardy claim, we must use *Blockburger* to compare the elements of first-degree rape involving serious physical injury to the victim with the elements of first-degree assault to deter-

13. *Id.*

14. *See also* U.S. Const. Amend V.

15. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

16. 284 U.S. at 304, 52 S.Ct. 180.

17. *Commonwealth v. Burge,* 947 S.W.2d 805, 811 (Ky.1996), *modified on denial of reh'g,* 947 S.W.2d 805 (Ky.1997) ("[W]e now depart from the 'same conduct' test ... and the 'single impulse' test ... and declare that double jeopardy issues arising out of multiple prosecutions henceforth will be analyzed in accordance with the principles set forth in *Blockburger v. United States, supra,* and KRS 505.020.").

18. KRS 505.020 provides, in relevant part, as follows:
    (1) When a single course of conduct of a defendant may establish the commis-

sion of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
(a) One offense is included in the other, as defined in subsection (2)....
....
(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:
(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged....

19. *Polk v. Commonwealth,* 679 S.W.2d 231, 233 (Ky.1984) ("This statute [KRS 505.020] is simply a codification of the rule laid down in *Blockburger v. United States* ...."); *Beaty v. Commonwealth,* 125 S.W.3d 196, 210 (Ky. 2003) (finding that KRS 505.020 was codification of *Blockburger* test).

mine if Dixon's simultaneous conviction for those offenses violates the prohibition against double jeopardy.

## 2. Comparison of the Elements of First–Degree Rape Involving Serious Physical Injury and First–Degree Assault.

The elements of first-degree assault appear in KRS 508.010. Subsection (1) of that statute provides, in pertinent part, that "[a] person is guilty of assault in the first degree when ... [h]e intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument...." Thus, for purposes of this case, the elements of assault in the first degree are that Dixon (1) intentionally (2) caused serious physical injury to Doe (3) by means of a deadly weapon or dangerous instrument.

The elements of first-degree rape appear in KRS 510.040. That statute provides, in relevant part, that "[a] person is guilty of rape in the first degree when ... [h]e engages in sexual intercourse with another person by forcible compulsion...." And KRS 510.040(2) provides that first-degree rape is a Class B felony, unless the victim is under twelve years old or receives a serious physical injury, in which case the offense is reclassified as a Class A felony.[20] So the General Assembly saw fit to punish more severely rapists who cause a serious physical injury to their victim than rapists who do not cause such an injury. The parties disagree, however, about whether the serious physical injury requirement is a substantive element of first-degree rape.

We previously have held that a fact that merely increases the possible punishment for an offense is not an element of the offense. For example, in Baker v. Commonwealth,[21] an appellant was convicted of, among other things, kidnapping and reckless homicide. Appellant argued that her convictions for kidnapping and reckless homicide constituted double jeopardy because the death of the kidnapping victim was also the basis for the reckless homicide conviction. This argument was premised, at least in part, on the fact that the felony classification of a kidnapping conviction depends on whether the victim was released alive.[22] We rejected that argument, holding that "whether the victim was released alive is not an element of the substantive offense of kidnapping. Such a determination is used only for purposes of determining the range of punishments which may be imposed."[23] Thus, application of Baker would lead to a conclusion that serious physical injury was a mere sentencing factor, not a substantive element of the offense.

But after Baker, the United States Supreme Court issued its landmark opinion in Apprendi v. New Jersey, in which it held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[24] Unquestionably, Doe's serious

20. Under KRS 532.060(2)(b), the punishment range for a Class B felony is between ten and twenty years' imprisonment. However, KRS 532.060(2)(a) provides that the punishment range for a Class A felony is between twenty and fifty years' imprisonment, or life imprisonment.

21. 922 S.W.2d 371 (Ky.1996).

22. See KRS 509.040(2) (providing that, inter alia, kidnapping is a Class B felony if the victim is released alive and without injury but is a capital offense if the victim is not released alive).

23. Baker, 922 S.W.2d at 376.

24. 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

physical injury increased Dixon's possible punishment. So in order properly for Dixon's rape conviction to be classified as a Class A felony, the jury was required to find beyond a reasonable doubt that Doe suffered a serious physical injury.[25]

We must conclude that serious physical injury is a substantive element of first-degree rape if the Commonwealth seeks to have a rape offense classified as a Class A felony.[26] So to the extent that *Baker*, or cases following its rule, hold to the contrary, they are overruled, based upon *Apprendi*. This conclusion should come as no surprise because we have already followed *Apprendi* in similar situations, such as our holding that a jury must find that a defendant possessed a firearm while committing a narcotics-related offense in order for the firearms enhancement statute [27] to apply.[28]

Therefore, in cases like this one, in which the Commonwealth prosecutes a defendant on a charge of first-degree rape under a theory that the victim suffered a serious physical injury, the elements of first-degree rape are as follows: (1) engaging in sexual intercourse with another person (2) by forcible compulsion, (3) which results in the victim receiving a serious physical injury.

■ Applying the *Blockburger* test to these two offenses, it is clear that first-degree rape premised on serious physical injury and first-degree assault each contains an element that the other does not. Specifically, first-degree rape requires sexual intercourse, but first-degree assault does not; first-degree assault requires a jury to find that the serious physical injury was obtained by use of a deadly weapon or dangerous instrument, but first-degree rape involving serious physical injury to the victim contains no such deadly weapon or dangerous instrument requirement. Although we certainly recognize the inescapable fact that a serious physical injury will usually be accomplished by use of a deadly weapon or dangerous instrument,[29] our

---

**25.** In fact, the instructions submitted by the trial court conform to *Apprendi* since those instructions gave the jury the option of finding Dixon guilty of first-degree rape under two scenarios: one where Doe did suffer a serious physical injury and one where she did not. The jury chose to find Dixon guilty under the theory that Doe did suffer a serious physical injury. Former Justice Cooper's model jury instructions also require the jury to find explicitly that that the victim received a serious physical injury in order to convict someone of the Class A felony version of first-degree rape. 1 COOPER & CETRULLO, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 4.22 (5th ed.2006).

**26.** *Apprendi*, 530 U.S. at 494, 120 S.Ct. at 2365 n. 19 ("[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense.").

**27.** KRS 218A.992.

**28.** *Johnson v. Commonwealth*, 105 S.W.3d 430, 435 (Ky.2003) ("Because KRS 218A.992(1) effected an increase in his sentence to twenty years, *Apprendi* required that the firearm charge be proven to the jury beyond a reasonable doubt.").

**29.** KRS 500.080(3) defines a *dangerous instrument* as "any instrument, including parts of the human body when a serious physical injury is a direct result of the use of that part of the human body, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury...." KRS 500.080(4) defines a *deadly weapon* as:

(a) A weapon of mass destruction;
(b) Any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged;
(c) Any knife other than an ordinary pocket knife or hunting knife;

*Blockburger*-guided double jeopardy analysis should focus only on whether each statute, on its face, contains a different element.[30] And, in any event, it is beyond doubt that there is no sexual intercourse element involved in first-degree assault. Thus, it is clear that under the *Blockburger* test, assault in the first degree is not a lesser included offense of first-degree rape involving serious physical injury to the victim.[31]

### 3. *Sherley v. Commonwealth.*[32]

Under the *Blockburger* test, first-degree assault is not a lesser-included offense of first-degree rape, which means that Dixon's double jeopardy argument fails as a matter of law. But application of *Blockburger* does not end our inquiry on this topic because Dixon also argues that our holding in *Sherley v. Commonwealth* mandates that his assault conviction merges with his rape conviction.

*Sherley* is very similar to the case at hand. In *Sherley*, an elderly woman was assaulted while visiting her husband's grave. The assailant struck the victim with a stick, took her purse, and forced her into an automobile. The victim then lost consciousness and could not remember further details.[33]

The victim was found the next day in a muddy ditch with some of her clothing pulled down to her ankles and some above her hips.[34] The victim had suffered a stroke. The authorities identified Sherley as the perpetrator of the horrible attack, so Sherley was charged and ultimately convicted of first-degree assault and first-degree robbery.[35] Sherley was also charged with first-degree rape but was convicted of attempt to commit first-degree rape.[36]

On appeal, Sherley contended that his simultaneous convictions for first-degree assault, first-degree robbery, and attempted rape violated double jeopardy because the same essential element—serious physical injury to the victim—was used in each

(d) Billy, nightstick, or club;

(e) Blackjack or slapjack;

(f) Nunchaku karate sticks;

(g) Shuriken or death star; or

(h) Artificial knuckles made from metal, plastic, or other similar hard material. . . .

**30.** *See, e.g., United States v. Gardner,* 417 F.Supp.2d 703, 709 (D.Md.2006) (holding that, subject to some exceptions involving conspiracy charges which are irrelevant to Dixon's case, "[u]nder a traditional *Blockburger* analysis, the court determines and compares the elements of the charged offenses based on the face of the statutes."); 21 Am. Jur.2d *Criminal Law* § 302 (2008) ("[A]pplication of this [*Blockburger*] test requires consideration only of the statutory elements of the offense, not the charging information, jury instruction, underlying proof needed, or the actual evidence presented at trial.") (footnotes omitted).

**31.** In actuality, Dixon's case is the rare exception where application of *Apprendi* may make no practical difference in the sentence Dixon received for rape because a twenty-year sentence is permissible for a first-degree rape conviction regardless of whether the jury finds that the victim suffered a serious physical injury. *Compare* KRS 532.060(2)(b) (providing for a maximum sentence of twenty years' imprisonment for conviction for a Class B felony) with KRS 532.060(2)(a) (providing for a minimum sentence of twenty years' imprisonment for conviction for a Class A felony). However, this unique fact does not lessen our holding that *Apprendi* applies to all cases involving first-degree rape where the victim allegedly suffered a serious physical injury.

**32.** 558 S.W.2d 615 (Ky.1977).

**33.** *Id.* at 616.

**34.** *Id.*

**35.** *Id.* at 615.

**36.** *Id.*

offense. We held that the assault and attempted rape convictions merged, stating that

> the force causing serious physical injury which elevated the charge of attempted rape to attempt to commit first-degree rape, a Class A felony, being the same serious physical injury, the basis for the first-degree assault conviction also merged the offense of first-degree assault and attempt to commit first-degree rape, a Class A felony. Thus the conviction for first-degree assault merged with the charge of attempt to commit first-degree rape, a Class A felony.[37]

We concluded that "the force used for conviction of first-degree assault merged with the force used to elevate the punishment for the other offenses and Sherley was convicted of one offense included in others as proscribed in KRS 505.020." [38]

Although the double jeopardy argument in *Sherley* was also made in the case now before us, under the facts of today's case, reasonable jurors could have concluded that Dixon was guilty of both first-degree assault and first-degree rape simply because Doe suffered two serious physical injuries to her head from a blow of the hammer delivered at different times during her ordeal at the store. In other words, since Doe was struck on the head with a hammer when the assailants first entered the store and was struck again after she was raped, a jury could have found that either blow to the head alone constituted the basis for the assault conviction. But the jury instructions actually given did not ask the jury to differentiate which blow to Doe's head formed the basis for finding Dixon guilty of assault.

In analogous circumstances, we have held that a jury should be required in the instructions to identify which act underlies each specific criminal offense.[39] And *Sherley* itself involved multiple injuries to the victim.[40] Because the jury instructions in this case did not require the jury to determine which hammer strike and which resulting head injury supported the rape and assault convictions and because *Sherley*'s continued viability is a matter of importance to the bench and bar of the Commonwealth, we must explore the merits of Dixon's argument concerning the application of the rule in *Sherley* to the facts of this case.

Our conclusion about the need to address *Sherley* is unchanged by the Commonwealth's fall-back position that the prosecutor's closing argument at trial sufficiently informed the jury which separate hammer blow supported each offense. Perhaps the prosecutor's differentiation in its closing argument could mean that the failure of the trial court's instructions to require the jury to identify specifically which hammer strike caused Doe to suffer which serious physical injury was a harm-

---

37. *Id.* at 617.

38. *Id.* at 617–18.

39. *See, e.g., Beaty*, 125 S.W.3d at 212–14 (holding that in a case where a defendant allegedly possessed two different items containing methamphetamine, in order to avoid double jeopardy problems the trial court should have required the jury to find which item containing methamphetamine supported the charge of possession of a controlled substance in order to ensure that the same item containing methamphetamine was not also used to support the charge of manufacturing methamphetamine); *Bell v. Commonwealth*, 245 S.W.3d 738, 743–44 (Ky.2008) (holding that the jury instructions in a case involving multiple sexual offenses should have contained some sort of identifying characteristic, such as the place or time of the offense, for each charge).

40. 558 S.W.2d at 616 (stating that victim was hit with a stick repeatedly, kicked, and slapped, in addition to the attempted rape).

less error.[41] But the issue here is not whether the instructions were erroneous. Rather, the precise issue is whether Dixon's convictions for both assault and rape violate the double jeopardy clause, as interpreted in *Sherley*. In other words, if *Sherley* is followed, then the assault charge against Dixon should have been dismissed; and no jury instructions regarding that offense should have been given.[42] It is a longstanding principle that a jury is presumed to follow a trial court's instructions,[43] and those instructions must be based upon the evidence presented.[44] But an attorney's arguments do not constitute evidence.[45] So the arguments of counsel are not sufficient to rehabilitate otherwise erroneous or imprecise jury instructions.

Turning to *Sherley*, the case itself does not contain any reference to *Blockburger*, despite the fact that *Blockburger* was rendered over forty years before this Court decided *Sherley*. In fact, *Sherley*'s failure to use the *Blockburger* test is curious because of the fact that we had expressly relied upon *Blockburger* in at least one previous opinion.[46] Additionally, although the opinions did not explicitly cite *Blockburger*, our predecessor-court had long ago espoused and utilized a test that is the de facto equivalent of the *Blockburger* test.

Specifically, in 1923, our predecessor-court opined that a conviction for sale of liquor to a minor would not bar a prosecution for sale of liquor without a license "because each offense contains elements that must be proven, which are wholly immaterial in proof of the others." [47] Thus, as the Court of Appeals noted, "[t]he prohibition against double jeopardy found in Kentucky's constitution had traditionally been interpreted in the same way as was done in *Blockburger*." [48]

Our failure in *Sherley* to use *Blockburger* means that *Sherley* is an aberration in our double jeopardy decisional law. As we made plain ten years ago in *Burge*, we are firmly committed to the *Blockburger* test to resolve double jeopardy claims.[49] As previously explained, Dixon's double jeopardy argument clearly fails the *Blockburger* test. And *Sherley* is out of step with double jeopardy cases which came both before and after it. Accordingly, we now overrule *Sherley*[50] and hold that the prohibition against double jeopardy is not violated when a defendant is convicted of first-degree assault and first-degree rape (involving a serious physical injury to the victim), even if the same serious physical injury to the victim is used to support each conviction.

41. *Bell*, 245 S.W.3d at 744.

42. *Sherley*, 558 S.W.2d at 618 (reversing first-degree assault conviction and remanding with directions that the charge be dismissed).

43. *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky.2006)

44. *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky.1981).

45. *See, e.g.*, 75A Am.Jur.2d *Trial* § 443 (2008).

46. *Brock v. Commonwealth*, 479 S.W.2d 644, 645 (Ky.1972).

47. *Newton v. Commonwealth*, 198 Ky. 707, 249 S.W. 1017, 1018 (1923).

48. *Shelton v. Commonwealth*, 928 S.W.2d 817, 818–19 (Ky.App.1996).

49. *Burge*, 947 S.W.2d at 811 (declaring that "double jeopardy issues arising out of multiple prosecutions henceforth will be analyzed in accordance with the principles set forth in *Blockburger v. United States* ....").

50. We remain committed, however, to our procedural holding in *Sherley* that failure to preserve double jeopardy issues "should not result in permitting a double jeopardy conviction to stand." 558 S.W.2d at 618.

### III.  *CONCLUSION.*

For the foregoing reasons, William Dixon's convictions for first-degree assault, first-degree rape, and first-degree robbery are hereby affirmed.

All sitting.   All concur.