RENDERED:  JULY 2, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0471-MR

TAMMY FEINAUER                                                      APPELLANT

v.             APPEAL FROM CAMPBELL CIRCUIT COURT
               HONORABLE DANIEL J. ZALLA, JUDGE
               ACTION NO. 16-CR-00912

COMMONWEALTH OF KENTUCKY                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE:  Tammy Feinauer appeals from the Campbell Circuit Court's

judgment sentencing her to two consecutive two-year prison sentences in

accordance with a jury's having found her guilty of two counts of reckless

homicide.  We reverse and remand because the trial court permitted the

Commonwealth to introduce text messages evidencing prior bad acts by Feinauer

insufficiently tethered to the reckless homicide charges.

## I. Relevant Factual and Procedural History

In the evening of March 3, 2016, Feinauer left her home to attend an event at her child's school. En route, her vehicle left her lane of traffic and collided head-on with a vehicle traveling in the opposite direction, tragically killing both occupants. Feinauer was taken to the University of Cincinnati Hospital (UC Hospital) in Ohio for treatment. At the hospital her blood was drawn multiple times. The first blood draw showed Feinauer to have a blood alcohol level of 0.048%. No alcohol was detected in the subsequent draws, nor were any drugs detected in any draws.

Feinauer was indicted on two counts of reckless homicide, which eventually proceeded to a January 2020 jury trial. Feinauer was found guilty of two counts of reckless homicide, and the jury recommended she serve consecutive two-year sentences. The trial court sentenced Feinauer in accordance with the jury's recommendation, after which she filed this appeal. Additional facts will be related as necessary in our analysis.[1]

---

[1] When relating the evidence presented at trial, Feinauer repeatedly cites to her counsel's opening argument instead of to the testimony, but "an attorney's arguments do not constitute evidence." *Dixon v. Commonwealth*, 263 S.W.3d 583, 593 (Ky. 2008).

## II. Analysis

### A. *The Text Messages Were Inadmissible*

We begin with Feinauer's argument that the trial court erred by admitting about fifteen texts, dating from November 2015 to March 2016, she had sent regarding speeding, drinking and driving, and/or texting and driving. We agree.

It is generally illegal to have open containers of alcohol in the passenger compartment of a motor vehicle under Kentucky Revised Statute (KRS) 189.530(2). It is also generally illegal to text and drive under KRS 189.292(2). Speeding is also against the law (*see, e.g.*, KRS 189.390), as is driving while impaired. KRS 189A.010. Plainly, therefore, the texts were evidence that Feinauer had engaged in prior misconduct (*i.e.*, bad acts).

"Generally, a defendant's prior bad acts are inadmissible because [u]ltimate fairness mandates that an accused be tried only for the particular crime for which he is charged." *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) (internal quotation marks and citation omitted). Consequently, courts must be wary when deciding whether to admit prior bad acts evidence because "there exists universal agreement that evidence of this sort is inherently and highly prejudicial to a defendant." *Bell v. Commonwealth*, 875 S.W.2d 882, 890 (Ky. 1994).

Admission of evidence regarding prior bad acts is governed by Kentucky Rule of Evidence (KRE) 404(b), which provides in relevant part:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

KRE 404(b) is plainly "exclusionary in nature . . . ." *Clark*, 223 S.W.3d at 96.

The Commonwealth argues that the evidence was admissible to show Feinauer's consciousness of guilt, an "unenumerated exception to KRE 404(b)'s rule of inadmissibility." *McDaniel v. Commonwealth*, 415 S.W.3d 643, 658 (Ky. 2013). Of course, "evidence is not admissible just because a party asserts that [it] tends to support one of the [KRE 404(b)] listed purposes" because a trial court also "must weigh the evidence's probativeness against the danger of undue prejudice." *Commonwealth v. Bell*, 400 S.W.3d 278, 282-83 (Ky. 2013) (internal quotation marks and citations omitted). Naturally, "[a]ll relevant evidence offered against a defendant will have some prejudicial tendency; otherwise, it would not be offered. The question is whether it creates a danger of *undue* prejudice." *St. Clair v. Commonwealth*, 455 S.W.3d 869, 893 (Ky. 2015).

KRE 404(b) was promulgated to prevent admission of pure character or propensity evidence, which is offered to show "that on other occasions a person has acted in a particular way" and so is "the sort of person who does that sort of thing or acts that way" meaning that he or she "is likely to have done the same sort of thing or acted that same way on the occasion at issue in the case." *Trover v. Estate of Burton*, 423 S.W.3d 165, 172 (Ky. 2014).  Courts utilize a three-part test to make the "often difficult" determination of whether KRE 404(b) evidence should be admitted.  *Jenkins v. Commonwealth*, 496 S.W.3d 435, 457 (Ky. 2016).

First, the court asks whether "the evidence [is] relevant for some purpose other than to prove the criminal disposition of the accused?  Aside from showing criminal propensity, that is, the extrinsic act evidence must bear *materially* on an element of the offense or on some other fact actually in dispute." *Id.* (internal quotation marks and citations omitted).  Second, "[t]he court should also consider whether the extrinsic act evidence is sufficiently probative, i.e., could the jury reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts[?]" *Id.* (internal quotation marks and citations omitted).  Finally, the court must ask, "is the extrinsic act evidence unduly prejudicial, that is, is the tendency of the evidence so strongly to lead the jury into improper character inferences that that tendency substantially outweigh[s] [the evidence's] probative value with regard to its proper uses?" *Id.* (internal quotation marks and citation

omitted). We review a trial court's evidentiary decisions under the abuse of discretion standard. *Matthews v. Commonwealth*, 371 S.W.3d 743, 749 (Ky. App. 2011).

We agree with Feinauer that the texts are minimally probative, at best, and their prejudicial impact far outstrips that extremely limited probative value. The Commonwealth did not charge Feinauer with speeding, driving while impaired, texting while driving, or even for having an open container of alcohol in her vehicle at the time of the crash. The evidence that she had drunk while driving, texted while driving, or sped in the past, therefore has no meaningful relationship to whether she did so at the time of the fatal collision. In sum, we discern no element(s) of reckless homicide for which the texts had material, probative value.

The Commonwealth argues the texts show Feinauer's consciousness of guilt since they, generally speaking, show she knew it was wrong to drink and drive, text and drive, or speed. Of course, speeding, texting and driving, driving while impaired, and having an open container of alcohol in a vehicle are contrary to Kentucky law, as previously explained. However, the Commonwealth has not cited, nor have we independently located, authority admitting evidence to show a defendant could have pre-offense consciousness of guilt. To the contrary, the authorities discussing consciousness of guilt consistently refer to post-crime conduct. *See, e.g.*, 2 ROBERT P. MOSTELLER, ET AL., MCCORMICK ON EVIDENCE §

263 (8th ed. 2020) ("Many acts of a defendant after the crime seeking escape are received as admissions by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself."); 1 EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3:4 (2020) ("In turn, the consciousness of guilt is evidence that the defendant is the person who committed the crime. The uncharged misconduct is an 'ex post facto indication' of the defendant's identity as the criminal. Since other persons do not manifest the same consciousness, the evidence at least slightly strengthens the inference of the defendant's identity as the criminal.") (footnotes and citations omitted). In short, we strongly question whether the consciousness of guilt exception can logically apply to admit KRE 404(b)-type evidence depicting acts which occurred prior to the offense(s) for which the defendant stands charged.

However, we need not definitively opine on the existence of a pre-crime consciousness of guilt exception because it would not apply under these facts. Though not explored deeply by the parties here or below, it is inarguable that "everyone is presumed to know the law; therefore, ignorance of the law is not an excuse." *Department of Revenue, Finance and Administration Cabinet v. Revelation Energy, LLC*, 544 S.W.3d 170, 176 (Ky. App. 2018). *See also, e.g.*, *Bullitt v. Commonwealth*, 595 S.W.3d 106, 115 (Ky. 2019). So, the Commonwealth did not need the texts to show that Feinauer knew speeding,

-7-

texting and driving, and having open alcoholic beverages in a vehicle are illegal because she, like everyone else, was already conclusively presumed to know the law. In fact, the Commonwealth admitted in its closing argument that "everybody" knows that it is against the law to drink and drive. Video Record, 1/28/20, 11:09:55, *et seq.*

Moreover, the Commonwealth points to no evidence showing that Feinauer was speeding, texting, talking on the phone, or impaired at the time of the collision.[2] "A person is guilty of reckless homicide when, with recklessness he causes the death of another person." KRS 507.050(1). A person acts recklessly when he or she "fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists" and that risk "must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." KRS 501.020(4). Having an open container of alcohol in the vehicle could have been a proper factor in concluding that Feinauer was guilty of reckless homicide, but showing that she

---

[2] At least one text admitted into evidence also discussed Feinauer's speeding but the Commonwealth's brief did not directly respond to Feinauer's assertion that the evidence at trial showed that she was not speeding at the time of the collision. In short, the Commonwealth cites to no specific argument that speeding was a factor in the fatal crash, so evidence that Feinauer had exceeded the speed limit in the past was wholly irrelevant. Also, she was apparently found with a phone in her hand after the accident but there is a dispute about whether it was her phone or whether someone else gave her a phone soon after the collision so she could contact her father. Regardless, the Commonwealth cites to no evidence directly showing that she was texting or talking on the phone at the time of the collision.

had engaged in illegal activities while driving in the past did not materially show that she acted recklessly in causing the tragic collision.

Instead, the prior instances of misconduct exemplified by the texts seem designed to show that Feinauer had a propensity for making poor decisions while driving. Indeed, the Commonwealth repeatedly stressed the texts in its closing argument to show that Feinauer had a history of breaking the law while driving. In fact, the Commonwealth began its closing argument by discussing the texts for over two minutes, including memorably asserting that:

> every time she [Feinauer] got behind the wheel it was almost like she was playing a game of Russian roulette . . . . Each time she did it, day after day after day. You heard the text messages. You can read them. . . . It's Russian roulette each time. Something was bound to happen at some point. This was the norm. And her norm was dangerous. Her norm was reckless.

Video Record, 1/28/20, 10:57:23, *et seq.*[3] Saying a person's "norm" is to engage in bad acts is functionally indistinguishable from saying their propensity is to engage in bad acts—the very type of "if they did it before they must have done it now" evidence KRE 404(b) was designed to guard zealously against. The trial court abused its discretion in admitting the texts.

---

[3] The Commonwealth returned to its "Russian roulette" characterization later in its closing argument.

The texts showed Feinauer engaging in prior, unrelated misconduct while driving in an emotionally charged case. The Commonwealth used the texts to argue *repeatedly* that Feinauer played a deadly game of "Russian roulette" whenever she drove a vehicle. Under those facts, we cannot logically say that the admission of the texts was an inconsequential, harmless error. *St. Clair*, 455 S.W.3d at 898 ("This Court cannot say with fair assurance that the jury was not swayed by this impermissible proof. Even if this Court could not say for certain that the error had a substantial effect on the jury's verdict, it is left in grave doubt and thus the conviction cannot stand.") (internal quotation marks and citations omitted); *Bell*, 875 S.W.2d at 890 (deeming prior bad acts evidence to be "inherently and highly prejudicial to a defendant."). We reverse Feinauer's convictions.

### B. *Other Issues Which May Recur on Remand*

Having determined that Feinauer's convictions must be reversed, we will briefly discuss issues which may recur on remand. Feinauer argues the Commonwealth belatedly disclosed evidence pertaining to the first blood draw at UC Hospital, such as the identity of who drew the blood. But that argument is moot since Feinauer has that evidence well in advance of a retrial, meaning it is irrelevant whether she had it sufficiently in advance of the first trial.

-10-

Feinauer relatedly argues her medical records from UC Hospital, which include the first blood draw which revealed alcohol in her bloodstream, were not properly authenticated. Though we have concerns with the authentication, we again need not definitively opine on it because additional, or different, authentication procedures may occur on remand. Moreover, it appears that the records were made an exhibit but were not admitted as evidence, and we decline to opine on whether an exhibit hypothetically was admissible.

Because UC Hospital is located outside Kentucky, Feinauer argues authentication of its records is governed by *Matthews v. Commonwealth*, 163 S.W.3d 11 (Ky. 2005). *Matthews* remains viable, but subsequent statutory amendments have provided an additional certification route. In *Matthews*, as here, the issue was the proper authentication of out-of-state medical records from a hospital. Our Supreme Court held that the records had to satisfy the KRE 902(11) certification requirements because the statutory exception for authenticating medical records found at KRS 422.300 did not apply to out-of-state hospital records.[4] *Id.* at 27. To be properly certified, *Matthews* explains that the out-of-

---

[4] Generally, KRE 902(11)(A) provides that medical records may be self-authenticated as a business record if there is no indication they are untrustworthy and the records custodian certifies:

> the original or a duplicate of a record of regularly conducted activity within the scope of KRE 803(6) or KRE 803(7) . . .

-11-

state records must satisfy KRE 902(11) by containing a certification stating that they "were made at or near the time of the occurrence of the matters set forth, that they were made by a person with knowledge of the matters, . . . [and] that the records were regularly kept." *Id.*

Here, the certification provides that the records were "true and complete reproductions of the original or electronic medical records that are kept in the regular course of business for UC Health" and "were made at the time of the condition and/or occurrences reported therein or within a reasonable time thereafter and accurately reflect the condition and/or occurrence." But the certification is not signed by the records custodian (instead, her name appears printed on an email signature line), nor does the certification state that the records "were made by a person with knowledge of the matters . . . ." *Matthews*, 163 S.W.3d at 27. Moreover, KRE 902(11)(C) requires a certification to contain "a written declaration under oath subject to the penalty of perjury . . . ." The purported certification from the UC Hospital records custodian contains no such declaration.

---

(i) Was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

(ii) Is kept in the course of the regularly conducted activity; and

(iii) Was made by the regularly conducted activity as a regular practice.

-12-

We also note the General Assembly subsequently amended KRS 422.300 (after *Matthews* but before the trial at hand) to encompass authentication of records from out-of-state hospitals. At the time *Matthews* was rendered, the statute provided that "'[m]edical charts or records of any *hospital licensed under KRS 216B.105* that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony . . . .'" *Matthews*, 163 S.W.3d at 23 (quoting KRS 422.300) (emphasis in *Matthews*). Of course, hospitals outside Kentucky are not licensed under KRS 216B.105 (which generally requires a license to operate a healthcare facility). Now KRS 422.300(2) provides in relevant part that "[m]edical charts or records of any hospital licensed under either KRS 216B.105 *or a similar law of another state or the United States* that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony . . . ." (Emphasis added.) Therefore, the UC Hospital records at issue may be authenticated via the procedures outlined in KRS 422.300, *et seq.*, provided that Ohio has a statute similar to KRS 216B.105 and all the other requirements are met. On remand, we are confident that the trial court will ensure that the UC Hospital records are

properly authenticated via sufficient testimony or otherwise before permitting them to be introduced.[5]

Finally, Feinauer argues Jack Hedges, a Kentucky State Trooper who served as an accident reconstructionist for the Commonwealth, testified at trial to opinions not contained in the Commonwealth's pretrial expert disclosure report. To avoid a party's being "deliberately surprised at trial[,]" precedent generally supports "the principle that an expert may not testify to an additional, undisclosed principle or premise not readily deducible from the conclusions contained in that expert's report." *Jones v. Commonwealth*, 237 S.W.3d 153, 158 (Ky. 2007). Because the convictions are being reversed and remanded on other grounds, we

---

[5] We decline to opine as to whether some handwritten comments on Feinauer's medical records mean they could not have been properly certified. The parties have not cited, nor have we located, the UC Hospital records in the record before us (likely because they were not introduced into evidence). The records custodian must certify that any copies provided to either party (after all, Feinauer also presumably could subpoena the records) are accurate reproductions of the originals. But we cannot know if the original records contain the handwritten notations. Feinauer may raise any argument she deems proper on remand regarding the handwritten notations as we decline to offer an advisory opinion in a vacuum.

We also decline to engage Feinauer's speculation that the Commonwealth "replaced the unclean copy of medical records used during the trial with a clean copy. If this is true, it is jaw dropping and proves that the Commonwealth knew they used an altered set of medical records." Appellant's brief, p. 22. Feinauer does not cite to the record to support what amounts to a claim of prosecutorial misconduct, and even seems unsure if the alleged alteration took place, given that she says it would be improper "if" true. It is even unclear to what Feinauer is referring since the records were not introduced into evidence. We remind all counsel of their obligations under the appropriate ethics rules, such as Supreme Court Rule (SCR) 3.130(3.4)(a) (which provides that it is improper for an attorney to, among other things, "unlawfully alter, destroy or conceal a document or other material having potential evidentiary value") and SCR 3.130(3.1) (which requires a lawyer to, essentially, only raise arguments containing a good faith basis in the law and facts). We expect on remand that all counsel will conduct themselves with scrupulous regard for all applicable laws and rules of procedure, evidence, and professional responsibility.

need not definitively determine whether any errors occurred here because the landscape on remand will be different.

The disclosure indicated that Trooper Hedges would testify that the pre-collision data were indicative of Feinauer's having been a distracted or intoxicated driver. At trial, the Commonwealth asked Trooper Hedges about any information he heard at trial that he did not previously know, and he responded that he did not know about the text messages and the toxicology report from UC Hospital. The Commonwealth then asked a lengthy question which essentially asked Hedges whether he maintained the same opinions he had before trial, and he responded that he still deemed Feinauer a distracted driver but added that the toxicology report made him believe she had exercised "poor judgment."

Feinauer contends that "it borders absurdity" to believe the Commonwealth did not discuss the texts and toxicology report with Trooper Hedges before trial. Appellant's brief, p. 25. In Feinauer's view, the Commonwealth's disclosure intentionally omitted Trooper Hedges' assessment of the toxicology report and texts "to prevent defense counsel from preparing for those opinions and/or address[ing] his qualifications to even offer such opinions prior to trial" because "[h]ad those opinions been divulged in his expert disclosure,

-15-

a Daubert[6] hearing would have been requested . . . ." *Id.* The Commonwealth maintains the disclosures were sufficient but does not directly address Feinauer's argument that Trooper Hedges exceeded the opinions expressed in the disclosures.

Again, Feinauer is accusing the Commonwealth of having engaged in misconduct, or at least gamesmanship, without citing concrete proof thereof. While it would have been reasonable for the Commonwealth before trial to have gone over the toxicology report with Trooper Hedges, Feinauer cites nothing to show that occurred. Also, Trooper Hedges opined before trial that Feinauer was a distracted driver, and his statement that Feinauer exercised poor judgment could be deemed "readily deducible" from his opinion that she was distracted or impaired since driving while distracted or impaired generally shows poor judgment.

In any event, everyone now knows that Trooper Hedges is aware of the toxicology report (the texts no longer being an issue since they will be excluded on remand) and believes Feinauer exercised poor judgment. On remand, Trooper Hedges may prepare a supplemental expert report and the Commonwealth may submit a revised expert disclosure, each of which should fully set forth Trooper Hedges' opinions and the bases therefor. And, in turn, Feinauer may seek

---

[6] Named after *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), "[a] *Daubert* hearing refers to a pre-trial hearing where the trial judge initially determines if the witness's opinion is based on scientifically valid principles and methodology, thereby rendering the opinion relevant and reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 740 n.7 (Ky. 2016).

a *Daubert* hearing regarding whether Trooper Hedges has sufficient experience and training to base his opinion(s), in whole or part, on the toxicology report (assuming the report is properly authenticated and admitted).

All other arguments we deem to be either without merit, redundant, unlikely to recur, or to involve contested facts which a jury alone may resolve.

### III. Conclusion

For the foregoing reasons, the judgment of the Campbell Circuit Court convicting Tammy Feinauer of two counts of reckless homicide is reversed and this case is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Wesley K. Williams
Burlington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky