RENDERED:  JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0645-MR

RICHARD YATES                                                    APPELLANT

APPEAL FROM FULTON CIRCUIT COURT
v.       HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 14-CR-00052

COMMONWEALTH OF KENTUCKY                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE, JUDGES.

THOMPSON, CHIEF JUDGE:  Richard Yates, *pro se*, ("Appellant") appeals from an order of the Fulton Circuit Court denying his motion to vacate his conviction pursuant to Kentucky Rules of Criminal Procedure ("RCr") 11.42.  He argues that the circuit court erred in failing to conclude that his trial counsel was ineffective. After careful review, we find no error and affirm the order on appeal.

# FACTS AND PROCEDURAL HISTORY

Appellant's underlying convictions have been adjudicated by the Kentucky Supreme Court via direct appeal on two occasions – in 2014 and 2018. In the interest of judicial economy, we adopt the high Court's recitation of the procedural history and facts as set out in *Yates v. Commonwealth*, 539 S.W.3d 654 (Ky. 2018). The Court stated:

> "Sally"[1] was a fourteen-year-old high school freshman in 2010, and lived with her mother and her stepfather, Richard Yates. Sally's mother worked the night shift at a local retail store and was often out of the family home during overnight hours. During this time, Yates would supervise Sally.
>
> At the time, Sally was dating an eighteen-year old upperclassman, Austin. Yates learned about her relationship with Austin and initially told Sally that her mother would not approve of her relationship with an older boy, threatening to tell her mother about the relationship. He told her that if her mother found out about the relationship, her boyfriend would go to jail for being in a relationship with a minor. The two argued for several hours before Yates escalated his threats, eventually telling Sally that Austin would go to jail and be "hurt" by other inmates once they found out he had been with a minor. At some time during the confrontation, Yates told Sally that if she would "do something sexual" with him, he would, in exchange, not tell her mother about her relationship with Austin.
>
> Following Yates's proposition, Sally eventually decided to "do something sexual" with Yates. At trial,

---

[1] A pseudonym was used for the victim throughout the trial and appellate proceedings due her age and the nature of the offenses.

Sally testified that although she had "consented" to having sex with Yates, she felt she had to in order to protect Austin. After deciding to have sex with Yates, Sally entered his bedroom in the middle of the night.

*Id.* at 657-58.

A sexual assault then occurred, which the Supreme Court described in some detail. The Court went on to state:

Sally testified that she told her mother and a friend about the sexual assault. Her friend ultimately believed Sally was telling the truth, but her mother did not. In July 2011, Sally asked a friend's mother, Ginger Alexander, if she could stay with her on nights when Sally's mother was working. Alexander asked why she would make that request, and Sally told her about the sexual assault. Alexander encouraged Sally to report the incident to police, which she did. Local authorities took a statement from Sally and obtained a search warrant for the Yates's residence. At the residence, local police recovered a sex toy in a plastic bag from between the mattress and box spring in Yates's bedroom, several computers, as well as several other items.

When police confiscated Yates's computers, he requested that he be able to remove the passwords from the computers in order to assist the police. Police informed him that he would not be able to access the computers and asked for his password. Yates wrote it down on a business card so that his wife could not see and told the officer, "It's not what it seems like." The password was "Toriistight" – Tori being a nickname of Sally's.

Yates went to trial based on these events and a Fulton Circuit Court jury convicted him of first-degree rape and first-degree sexual abuse. He was sentenced to twenty years' imprisonment on the rape charge and five

years' imprisonment on the sexual abuse charge. Those sentences were set to run consecutively, for a total of twenty-five years' imprisonment. Yates then appealed his original conviction to this Court. In our opinion in *Yates v. Commonwealth*, 430 S.W.3d 883 (Ky. 2014), we held that there was insufficient evidence to prove first-degree rape, and that an evidentiary error required reversal on the first-degree sexual abuse charge. Therefore, we reversed Yates's convictions and remanded to the trial court for further proceedings. Pertinently, we noted:

> Because the Commonwealth did not prove the forcible-compulsion element, Appellant's conviction for first-degree rape cannot stand and must be reversed. This means that he may be retried for any lesser-included offenses that were included in the instructions at trial. The trial court, however, only instructed on the lesser offense of unlawful transaction with a minor, not third-degree rape. For that reason, if Appellant is retried, he cannot be convicted of third-degree rape.

*Id.* at 895.

Following this Court's remand for a new trial, the Commonwealth indicted Yates on six charges, four of which were not charged in the first trial. Therefore, in addition to charges of first-degree unlawful transaction with a minor and first-degree sexual abuse, Appellant faced charges in his second trial for incest, use of a minor in a sexual performance, first-degree unlawful imprisonment – and, in spite of this Court's explicit directive to the contrary – third-degree rape. The trial court dismissed the third-degree rape charge and the jury convicted Yates of the remaining five charges. The jury recommended a sentence of seventy years, which the trial court imposed.

-4-

*Id.* at 658-59.

The Court went on to affirm Appellant's convictions for unlawful transaction with a minor and sexual abuse,[2] along with the corresponding sentences totaling 25 years. It dismissed the convictions of incest, use of a minor in a sexual performance, and unlawful imprisonment.

On February 19, 2019, Appellant, *pro se*, filed a motion in Fulton Circuit Court for relief pursuant to RCr 11.42 alleging that his trial counsel was ineffective when the matter was retried on remand. He moved to proceed *in forma pauperis* and requested that counsel be appointed. In response to this request, the trial judge appointed counsel from the Department of Public Advocacy. After reviewing Appellant's motion, appointed counsel moved to withdraw stating that counsel determined Appellant's motion not to be one that a reasonable person would be willing to bring at his own expense. The circuit court granted counsel's motion to withdraw, and later entered an order denying Appellant's motion for relief. This appeal followed.

## STANDARD OF REVIEW

To prevail on a claim of ineffective assistance of counsel, Appellant must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that

---

[2] Kentucky Revised Statutes ("KRS") 530.064 and KRS 510.110.

-5-

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.*

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. (Internal citation omitted).

*Id.* at 691-92, 104 S. Ct. at 2066-67. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Additionally, "a hearing is required only if there is an issue of fact which cannot be

-6-

determined on the face of the record." *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993).

## ARGUMENTS AND ANALYSIS

Appellant, *pro se*, argues that the Fulton Circuit Court erred in failing to conclude that, per RCr 11.42, he did not receive the effective assistance of counsel to which he was entitled. Appellant first asserts that his trial counsel was ineffective in failing to use records from the Lincoln Trails Psychiatric Center to impeach Sally's testimony at trial.[3] He directs our attention back to the first trial, noting that defense counsel took 90 days to request that the circuit court release the Lincoln Trail records. He notes that some of the Lincoln Trail documents were read into the record at the first trial, which he claims were exculpatory. Appellant argues that had his defense counsel more fully investigated the Lincoln Trail documents, more exculpatory statements might have been found to impeach Sally's claim of Appellant's sexual misconduct at the second trial. The substance of Appellant's argument on this issue is that counsel's failure to fully investigate and utilize the Lincoln Trail records demonstrated her failure to provide the effective assistance of counsel to which he was entitled.

---

[3] "Sally" received counseling at Lincoln Trail after the sexual assault, though the scope of the treatment is not set out in the record. In Appellant's 2014 appeal, the Kentucky Supreme Court found that on December 28, 2010, an unknown person with the initials "J.H." noted in Sally's file that Sally denied that Appellant engaged in any improper sexual acts. J.H. apparently was never identified. The Supreme Court ruled that on remand for retrial, defense counsel was entitled to question Sally about her alleged prior inconsistent statement.

In the weeks leading up to the second trial, Appellant's counsel twice moved for leave to use the Lincoln Trail records at trial to impeach Sally's testimony. The Commonwealth moved *in limine* to bar the use of the documents, in part because "J.H." was never identified. On the morning of the second trial, the Fulton Circuit Court entered an order barring Appellant's usage of the records to impeach Sally's testimony at trial.[4]

In considering Appellant's motion for RCr 11.42 relief on this issue, the circuit court found that defense counsel made every reasonable effort to utilize the records at the second trial by way of two motions, and that the circuit court's ruling denying counsel's motions was an issue of law resolved by the court and not an act of malfeasance of defense counsel. This conclusion is supported by the record and the law. The circuit court found, and we agree, that the court's ruling should have been raised, if at all, on direct appeal to the Kentucky Supreme Court and not via an RCr 11.42 motion. A convicted person is required to raise via direct appeal all issues at trial of which he knew or should have known. *Lucas v. Commonwealth*, 380 S.W.3d 554, 555-56 (Ky. App. 2012). At the time of his second appeal, Appellant was aware of the circuit court's ruling denying his

---

[4] On page 5 of its written argument, the Commonwealth states that the trial court granted defense counsel's motion to allow the use of the Lincoln Trail records to impeach Sally's testimony. This statement may refer to what occurred at the first trial rather than the second trial.

counsel's motion to use the Lincoln Trail records. As such, this issue should have been raised, if at all, on direct appeal. We find no error.

Appellant next argues that his trial counsel was ineffective in failing to locate, interview, and subpoena counselors or doctors from Lincoln Trail or other places whose testimony might have swung the case in her favor. Citing *United States v. Gray*, 878 F.2d 702 (3rd Cir. 1989), Appellant argues that defense counsel exhibits deficient performance by making no effort to locate and interview witnesses whose testimony could have supported an effective defense.

There is a strong presumption of trial counsel's effectiveness, which may not be overcome by mere speculation. *Parrish v. Commonwealth*, 272 S.W.3d 161, 171 (Ky. 2008). Appellant argues what *might* have happened *if* his trial counsel were more diligent in uncovering additional witnesses. As noted in *Parrish*, though, this is precisely the kind of speculation which the presumption of counsel's competence is designed to combat. Appellant's speculation as to what might have occurred does not demonstrate that counsel made errors so serious as to not be the "counsel" guaranteed by the Sixth Amendment, nor that counsel's deficient performance prejudiced the defense. *Strickland*, *supra*. We find no error.

Appellant's third argument is that his trial counsel was ineffective in failing to have a purple vibrator found at the scene, and which Sally said Appellant used on her during the sexual assault, tested for Sally's DNA. Appellant asserts

that as there was no physical evidence that an assault occurred, the only physical evidence the Commonwealth could have produced would have been Sally's DNA, if any, found on the vibrator. Appellant argues that if no DNA were found on the vibrator, it would have been exculpatory and would have undermined the Commonwealth's case against him.

Appellant's argument is purely speculative, and there is no basis for concluding that testing the vibrator for DNA would have bolstered Appellant's defense. If a DNA test returned no findings, or found the DNA of someone other than Sally, it would have little if any exculpatory value in the context of all of the evidence presented by the Commonwealth. It is also possible that Sally's DNA could have been found on the vibrator, which would not be helpful to the defense. In addition, the Commonwealth notes that several months elapsed between the sexual assault the execution of the search warrant, during which time any DNA on the vibrator could have been lost. Irrespective of this, Appellant's argument is purely speculative as to the possible results of a DNA test, and the usefulness of those results to Appellant. As such, it falls well short of demonstrating a reasonable probability that but for counsel's alleged failure to pursue DNA testing, the results of the proceeding would have been different.

Appellant next argues that his trial counsel improperly failed to impeach Sally's testimony at trial by pointing to conflicting statements she made in

an August 2, 2011 recorded interview. He contends that the video would have revealed inconsistencies in Sally's trial testimony, including whether the sexual assault occurred on a weekday or weekend, and whether she spoke about the assault while at Lincoln Trail. Appellant argues that counsel's failure to fully exploit Sally's inconsistent statements demonstrates counsel's failure to provide the effective assistance to which he was entitled.

Counsel's decision to challenge Sally's trial testimony, if at all, and the manner in which that is accomplished, constitutes a trial strategy. We will not second-guess in hindsight matters involving trial strategy. *Robbins v. Commonwealth*, 365 S.W.3d 211, 214 (Ky. App. 2012). Further,

> [n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

*Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065.

As defense counsel's decision not to employ the August 2, 2011 recorded interview at trial constitutes a trial strategy which we may not second-guess, there is no basis for concluding that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, nor that counsel engaged in deficient performance that prejudiced the defense. *Id.* at 687, 104 S. Ct. at 2064. Accordingly, we find no error on this issue.

Appellant goes on to assert several additional alleged deficiencies committed by his defense counsel in preparation for trial or at trial, which he argues demonstrate counsel's ineffectiveness. He argues that counsel improperly failed to object to the testimony of Ginger Alexander, in whom Sally confided about the sexual assault. He also contends that counsel provided ineffective assistance in failing to conduct adequate pretrial investigation; that counsel should have objected to the Commonwealth's closing argument; that counsel should have attacked the scope and nature of the search warrant; and, that counsel was deficient in her review of the 2012 trial proceeding. The substance of these arguments is that counsel's errors in the preparation for or execution of her trial performance were so deficient as to constitute ineffective assistance per *Strickland*.

We have closely examined these claimed deficiencies, both individually and in the context of counsel's overall trial performance. Our examination has uncovered no deficient performance as envisioned by *Strickland*.

Appellant has not shown that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, nor that the deficient performance deprived Appellant of a fair trial whose result is reliable. *Strickland*, *supra*. The record demonstrates that Appellant received effective assistance on these issues.

Lastly, Appellant argues that the circuit court erred in failing to grant an evidentiary hearing on his RCr 11.42 motion. We disagree. No hearing is required where the motion may be resolved by reference to the record. *Fowler v. Commonwealth*, 634 S.W.3d 605, 609 (Ky. App. 2021), *discretionary review denied* (Dec. 8, 2021). Appellant's arguments are justiciable by reference to the record. Thus, the circuit court did not err in adjudicating his motion without a hearing.

## CONCLUSION

In order to prevail on an RCr 11.42 motion alleging ineffective assistance of counsel, an appellant must overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Appellant has not overcome that presumption, and has fallen short of demonstrating a reasonable likelihood that the outcome of the proceeding would have been different but for counsel's alleged ineffective assistance. The record supports the Commonwealth's

contention that Appellant's trial counsel provided the effective assistance to which Appellant was entitled. For these reasons, we affirm the order of the Fulton Circuit Court denying Appellant's motion for RCr 11.42 relief.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Richard Yates, *pro se*
Sandy Hook, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Ken W. Riggs
Assistant Attorneys General
Frankfort, Kentucky