RENDERED: FEBRUARY 15, 2018
TO BE PUBLISHED



# Supreme Court of Kentucky

2015-SC-000504-MR

DATE 3/8/18 Kim Redmon, DC

RICHARD YATES          APPELLANT

ON APPEAL FROM FULTON CIRCUIT COURT
V.       HONORABLE TIMOTHY A. LANGFORD, JUDGE
NO. 14-CR-00052

COMMONWEALTH OF KENTUCKY          APPELLEE

## OPINION OF THE COURT BY JUSTICE WRIGHT

### AFFIRMING IN PART, REVERSING IN PART

A jury convicted Richard Yates of incest, first-degree unlawful transaction with a minor, use of a minor in a sexual performance, first-degree unlawful imprisonment, and first-degree sexual abuse. The jury recommended sentences of twenty years' imprisonment for incest, unlawful transaction with a minor, and use of a minor in a sexual performance; and five years' imprisonment each for unlawful imprisonment and sexual abuse. The jury recommended that these sentences should run consecutively. Consistent with the jury's sentencing recommendations, the trial court fixed Yates's sentence at seventy years' imprisonment.

Yates now appeals as a matter of right, Kentucky Constitution § 110(2)(b), arguing that the trial court erred by: (1) overruling his motion to dismiss his indictment due to prosecutorial vindictiveness; (2) overruling his motions for a directed verdict for insufficiency of evidence; (3) permitting various double jeopardy violations; and (4) permitting the victim's mother to

improperly vouch for the victim's credibility. For the reasons set forth below, we affirm in part and reverse in part.

## I. BACKGROUND

"Sally"[1] was a fourteen-year-old high school freshman in 2010, and lived with her mother and her stepfather, Richard Yates. Sally's mother worked the night shift at a local retail store and was often out of the family home during overnight hours. During this time, Yates would supervise Sally.

At the time, Sally was dating an eighteen-year old upperclassman, Austin. Yates learned about her relationship with Austin and initially told Sally that her mother would not approve of her relationship with an older boy, threatening to tell her mother about the relationship. He told her that if her mother found out about the relationship, her boyfriend would go to jail for being in a relationship with a minor. The two argued for several hours before Yates escalated his threats, eventually telling Sally that Austin would go to jail and be "hurt" by other inmates once they found out he had been with a minor. At some time during the confrontation, Yates told Sally that if she would "do something sexual" with him, he would, in exchange, not tell her mother about her relationship with Austin.

Following Yates's proposition, Sally eventually decided to "do something sexual" with Yates. At trial, Sally testified that although she had "consented"

---

[1] Consistent with this Court's previous opinion and the parties' briefs, "Sally" is a pseudonym employed in this opinion to protect the minor victim's true identity to the extent possible.

2

to having sex with Yates, she felt she had to in order to protect Austin. After deciding to have sex with Yates, Sally entered his bedroom in the middle of the night. Sally testified that Yates grabbed some kind of bottle from a nightstand, put his hands on it, and then put his hands down her pants and touched her genital area. Sally stated that he told her, "It was going to feel good, but that she wouldn't like it." Yates then positioned Sally so that she was bent over the end of the bed on her stomach with her feet on the floor. She testified that Yates took something out of a plastic bag between the mattress and box springs of his bed and inserted it into her vagina. Sally did not see what the item was at the time. He then removed the item from Sally's vagina, flipped her on her back, and had sexual intercourse with her.

Sally testified that she told her mother and a friend about the sexual assault. Her friend ultimately believed Sally was telling the truth, but her mother did not. In July 2011, Sally asked a friend's mother, Ginger Alexander, if she could stay with her on nights when Sally's mother was working. Alexander asked why she would make that request, and Sally told her about the sexual assault. Alexander encouraged Sally to report the incident to police, which she did. Local authorities took a statement from Sally and obtained a search warrant for the Yates's residence. At the residence, local police recovered a sex toy in a plastic bag from between the mattress and box spring in Yates's bedroom, several computers, as well as several other items.

When police confiscated Yates's computers, he requested that he be able to remove the passwords from the computers in order to assist the police.

3

Police informed him that he would not be able to access the computers and asked for his password. Yates wrote it down on a business card so that his wife could not see and told the officer, "It's not what it seems like." The password was "Toriistight"—Tori being a nickname of Sally's.

Yates went to trial based on these events and a Fulton Circuit Court jury convicted him of first-degree rape and first-degree sexual abuse. He was sentenced to twenty years' imprisonment on the rape charge and five years' imprisonment on the sexual abuse charge. Those sentences were set to run consecutively, for a total of twenty-five years' imprisonment. Yates then appealed his original conviction to this Court. In our opinion in *Yates v. Commonwealth*, 430 S.W.3d 883 (Ky. 2014), we held that there was insufficient evidence to prove first-degree rape, and that an evidentiary error required reversal on the first-degree sexual abuse charge. Therefore, we reversed Yates's convictions and remanded to the trial court for further proceedings. Pertinently, we noted:

> Because the Commonwealth did not prove the forcible-compulsion element, Appellant's conviction for first-degree rape cannot stand and must be reversed. This means that he may be retried for any lesser-included offenses that were included in the instructions at trial. The trial court, however, only instructed on the lesser offense of unlawful transaction with a minor, not third-degree rape. For that reason, if Appellant is retried, he cannot be convicted of third-degree rape.

*Id.* at 895.

Following this Court's remand for a new trial, the Commonwealth indicted Yates on six charges, four of which were not charged in the first trial. Therefore, in addition to charges of first-degree unlawful transaction with a

4

minor and first-degree sexual abuse, Appellant faced charges in his second trial for incest, use of a minor in a sexual performance, first-degree unlawful imprisonment—and, in spite of this Court's explicit directive to the contrary—third-degree rape. The trial court dismissed the third-degree rape charge and the jury convicted Yates of the remaining five charges. The jury recommended a sentence of seventy years, which the trial court imposed. This appeal followed. We set forth additional facts as necessary below.

## II. ANALYSIS

### A. Prosecutorial Vindictiveness

As noted above, following this Court's remand for a new trial, the Commonwealth indicted Yates on four charges not charged in the first trial: incest, use of a minor in a sexual performance, first-degree unlawful imprisonment, and third-degree rape. Although the third-degree rape charge was ultimately dismissed per this Court's opinion remanding, its inclusion supports Yates's argument of prosecutorial vindictiveness, given that this Court expressly admonished the Commonwealth that it could not convict Yates of third-degree rape. *See Yates,* 430 S.W.3d at 895 ("[I]f Appellant is retried, he cannot be convicted of third-degree rape.").

On the morning of his second trial, Yates moved the trial court to dismiss his indictment for prosecutorial vindictiveness based on the Commonwealth's addition of four new charges (all of which could have been charged in the first trial) after his successful appeal. The Commonwealth responded that this Court's opinion forced it to reexamine the case from the perspective of consent

5

rather than force. The Commonwealth contended that it had not indicted Yates on incest, use of a minor in a sexual performance, or unlawful imprisonment in the first trial because it believed that those charges contained an element of consent which, it believed, contradicted the forcible-compulsion theory it pursued in the first trial and would have confused the jury.

The United States Supreme Court first recognized prosecutorial vindictiveness in *North Carolina v. Pearce.* 395 U.S. 711 (1969). In *Pearce,* the Court held that for a judge to impose a more severe sentence after a new trial, the decision to do so must "be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726. "Due process of law," the Court made clear, "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725.

"Generally, a potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment." *United States v. Suarez,* 263 F.3d 468, 480 (6th Cir. 2001). Once a defendant establishes that "the prosecutor has some stake in deterring the defendant's exercise of his rights and . . . the prosecutor's conduct was somehow unreasonable,' then the . . . court may find that there is a 'reasonable likelihood of vindictiveness' and may presume an improper vindictive motive." *United States v. LaDeau,* 734 F.3d

561, 566 (6th Cir. 2013) (brackets omitted) (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)).

There are two types of prosecutorial vindictiveness: actual and presumptive. Actual vindictiveness requires "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)). Yates does not argue that the Commonwealth acted with actual vindictiveness.

Instead, he argues that the Commonwealth's actions were presumptively vindictive. "Given the severity of such a presumption, . . . which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct," we have made clear that this Court will presume vindictiveness "only in cases in which a reasonable likelihood of vindictiveness exists." *Commonwealth v. Leap*, 179 S.W.3d 809, 813 (Ky. 2005) (quoting *United States v. Goodwin*, 457 U.S. 368, 373, (1982)).

The Commonwealth's argument against Yates's prosecutorial vindictiveness claim is two-fold. First, it argues that this Court, in its opinion remanding Yates's case for retrial, contemplated charges other than the ones contained in the original indictment. As we noted above, in that opinion, we stated:

> Because the Commonwealth did not prove the forcible-compulsion element, Appellant's conviction for first-degree rape cannot stand and must be reversed. This means that he may be retried for any lesser-included offenses that were included in the instructions at trial. The trial court, however, only instructed on the lesser offense of unlawful transaction with a minor, not third-degree rape. For

7

that reason, if Appellant is retried, he cannot be convicted of third-degree rape.

*Yates*, 430 S.W.3d at 895. Given that the Court qualified "lesser-included offenses" as those "that were included in the instructions at trial," the Court was not commenting on whether additional charges not presented in the first indictment were appropriate in the second. This is not to say that additional charges could not have been added in the second trial, only that, in making the statement above, the Court was not commenting thereon.

The Commonwealth's second argument is that this Court's holding that the element of forcible compulsion was not present in Yates's conduct prompted it to "re-examine the case, regarding the act as consensual rather than forced." The Commonwealth added four new charges following Yates's successful appeal to this Court—two Class B and two Class D felonies.[2] Although none of the additional charges were of a higher class than the original charges, they carried the potential to (and actually did) increase Yates's original sentence by forty-five years.

As previously noted, the Commonwealth argued that it added these charges after this Court's opinion forced it to re-examine Yates's prosecution, focusing on consent. However, that contention is belied by the Commonwealth's indicting Yates for unlawful transaction with a minor during his first trial. During that trial, the jury was instructed on both first-degree rape and unlawful transaction with a minor, the primary distinguishing factor

---

[2] Including third-degree rape, which, as noted above, was dismissed by the trial court.

8

between the two being that the former requires forcible compulsion, while the latter implies consent. This point was emphasized by the Commonwealth in its closing argument. As the prosecutor explained, if the jury believed Yates had used force, it could convict him of first-degree rape; however, if the jury believed Sally had consented to the illegal act, it could convict Yates of unlawful transaction with a minor. Specifically, the prosecutor argued in closing: "Either rape first or unlawful transaction with a minor, you can't do both, you must do one of two." Therefore, it is clear that the Commonwealth had considered and charged Yates with crimes in which the victim consented to the sexual activity in the first trial.

Furthermore, the issue of consent was either immaterial or would have been a defense to the new charges brought by the Commonwealth. First, as to incest, we note that Sally was less than eighteen years of age. Therefore, her consent was irrelevant to the elements of the charge. Next, consent is irrelevant to the elements of the crime of use of a minor in a sexual performance. The crime is the same whether the minor was forced or consented. As to the unlawful imprisonment charge, the Commonwealth is mistaken in any analysis finding a consensual element to the crime. This crime requires that the victim be knowingly and unlawfully restrained—and KRS 501.010(2) defines "restrain" as confining another person "without consent." Finally, Yates was also indicted for third-degree rape, a crime for which this Court had specifically said he could not be properly convicted on retrial. While the trial court dismissed this charge, consent was likewise

9

immaterial to its elements. It is impossible to understand the Commonwealth's analysis that led it to conclude the new charges contained elements of consent. Therefore, the Commonwealth failed to present a viable analysis as to its reasoning behind bringing the four new charges.

We note that a prosecutor "simply may come to realize that information possessed by the State has a broader significance," *Goodwin*, 457 U.S. at 381, and that would not be grounds for a claim of prosecutorial vindictiveness. However,

> once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id.* Even the fact that charges added after a successful appeal are "much more likely to be improperly motivated" does not necessarily preclude them entirely. In some cases, new information may have come to light, properly necessitating new charges or a change in strategy. Those are simply not the facts here. The new charges added after Yates's successful appeal were based on no new evidence or testimony, and the Commonwealth's reasoning for adding the new charges is contradicted by its strategy during the first trial. This situation, then, presents a reasonable likelihood of vindictiveness. Therefore, we reverse Yates's convictions for incest, use of a minor in a sexual performance, and unlawful imprisonment, and remand to the trial court to dismiss these charges. However, because unlawful transaction with a minor and first-degree

10

sexual abuse were both charged in the original indictment and, thus, were not the result of prosecutorial vindictiveness, we address Yates's remaining claims of error as applied to those convictions.

## B. Directed Verdict

Yates claims that the trial court erred by not granting a directed verdict on the charge of unlawful transaction with a minor. He concedes that the issue is not preserved, and asks this Court to review the trial court's decision for palpable error. RCr 10.26; *McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky. 2013) (We will not reverse for palpable error unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

The Commonwealth, however, contends that by making a motion for directed verdict on the unlawful transaction with a minor charge at the end of the first trial, but not doing so at the end of the second trial, Yates waived the sufficiency of the evidence issue. To support that contention, the Commonwealth relies on *Chavies v. Commonwealth*, 354 S.W.3d 103, 113 (Ky. 2011). However, the Commonwealth's reliance is misplaced. In *Chavies*, the defendant "conceded that the Commonwealth's proof was sufficient to survive a motion for a directed verdict," and, thus, Chavies affirmatively waived his objection. But here, no such concession occurred—Yates merely did not move for a directed verdict at the close of the second trial. Although the issue was not preserved for appeal, Yates did not affirmatively waive it in the trial court as in *Chavies*. Thus, we will review this claim for palpable error as requested.

11

When reviewing a challenge to a trial court's denial of a motion for directed verdict, this Court construes all evidence in the light most favorable to the Commonwealth. *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009). In doing so, we must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

"A person is guilty of unlawful transaction with a minor in the first degree when he or she induces, assists, or causes a minor to engage in . . . illegal sexual activity." KRS 534.060(1). As we have explained:

> "To induce" signifies a successful persuasion; that the act has been effective and the desired result obtained, and that "to engage" denotes action and means to employ one's self; to take part in. Thus, to complete the offense, the minor must consent to and actively participate in the activity.

*Combs v. Commonwealth*, 198 S.W.3d 574, 578 (Ky. 2006).

Yates concedes Sally testified that she "consented" even though she did not want to. Nonetheless, he contends that her "consent" was based on duress. Sally felt threatened to have sex with him, he argues, because he told her that unless she did so, he would tell her mother about her relationship with her eighteen-year-old boyfriend.

Yates cites to *Combs* to support his argument. There, this Court held that the "consent" element of first-degree unlawful transaction with a minor was not met where the victim "'did not want him to do it,' [and] she did not

12

consent to and actively participate in" the illegal sexual activity. *Id.* This case is easily distinguishable from *Combs*, though, because the victim herself testified that she had indeed "consented" to the sexual act. Based on her testimony, both as to consent and participation, a reasonable juror could find Yates guilty of first-degree unlawful transaction with a minor. Therefore, the trial court did not err in refusing to direct a verdict of acquittal on that charge.

## C. Double Jeopardy—Retrial of Unlawful Transaction with a Minor

At Yates's first trial, the jury was instructed on first-degree rape and, in the alternative, first-degree unlawful transaction with a minor. The unlawful transaction with a minor instruction immediately followed the first-degree rape instruction and was separated by "or" at the bottom of the rape instruction. The unlawful transaction with a minor instruction began, "If you find the Defendant Not Guilty under Instruction No. 5 of Rape First-Degree, you will find the Defendant guilty of First-Degree Unlawful Transaction with a Minor under this instruction if [the listed elements are satisfied]." The trial court also explained to the jury that "there's an 'or' at the bottom of that page because five and six are coupled together." Again, the Commonwealth, too, emphasized this point in its closing: "Either rape first or unlawful transaction with a minor, you can't do both, you must do one of two." The jury found Yates guilty of first-degree rape and did not complete the unlawful-transaction verdict form.

When the trial court entered its final judgment, the court dismissed the unlawful transaction with a minor charge. Four days later, the trial court issued a written order, finding:

13

[T]he Jury having found the Defendant guilty of Rape in the First Degree and Sexual Abuse in the First Degree, but finding the Defendant not guilty of Unlawful Transaction with a Minor in the First Degree, and the Court having heard Counsel, and the Court being otherwise sufficiently advise; IT IS HEREBY THE ORDER OF THIS COURT that the Defendant is found not guilty of Count III of the Indictment, Unlawful Transaction with a Minor in the first Degree by the findings of the Jury in the above styled action.

After this Court's reversal on Yates's first direct appeal, the Commonwealth re-indicted Yates on unlawful transaction with a minor. Yates objected, arguing that the jury found him not guilty of the charge and pointing to the trial court's order stating as much. Thus, re-indicting him of unlawful transaction with a minor, Yates contended, violated double jeopardy.

The trial court rejected Yates's argument, ruling that, based on this Court's opinion, the unlawful-transaction charge was a lesser-included offense that this Court authorized for retrial. We do not take issue with that interpretation. As noted above, we stated in Yates's first direct appeal that on remand he could be retried for "any lesser-included offenses that were included in the instructions at trial"—the only lesser-included offense included in the instructions, we noted, was unlawful transaction with a minor. After rejecting Yates's double-jeopardy argument, the trial court set aside its order finding him not guilty of unlawful transaction with a minor and denied his motion to dismiss that charge.

The Double Jeopardy Clause of the Fifth Amendment mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const, amend. V; *see also* Ky. Const. § 13. We have held that the Fifth Amendment and Section 13 of the Kentucky Constitution are

14

"identical in . . . their prohibition against double jeopardy." *Jordan v. Commonwealth;* 703 S.W.2d 870, 872 (Ky. 1985). The General Assembly codified this principle in KRS 505.040, which states in part:

> Although a prosecution is for a violation of a different statutory provision from a former prosecution or for a violation of the same provision but based on different facts, it is barred by the former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal, a conviction which has not subsequently been set aside, or a determination that there was insufficient evidence to warrant a conviction . . .
>
> or
>
> (2) The former prosecution was terminated by a final order or judgment which has not subsequently been set aside and which required a determination inconsistent with any fact necessary to a conviction in the subsequent prosecution . . . .

Because the trial court subsequently set aside its order acquitting Yates of unlawful transaction with a minor, under subsection (2), double jeopardy did not bar Yates's being retried on that charge.

In *Acosta v. Commonwealth,* 391 S.W.3d 806 (Ky. 2013), this Court was presented with a situation similar to Yates's. There, the trial court instructed the jury as to two different theories of guilt on criminal abuse. *Id.* One was characterized as direct abuse, and the other, permitted abuse. *Id.* As here, the two theories were presented in separate, alternative instructions. *Id.* After the jury found Acosta guilty under the first instruction without reaching the second, this Court held on appeal that the first instruction was unsupported by the evidence. *Id.* at 820. In remanding the case, although we did not permit retrial on the direct-abuse theory, we did on permitted abuse "because

15

the jury never reached that question, and [Acosta] was not entitled to a directed verdict of acquittal" under that theory. *Id.* Here, as there, the jury never reached the unlawful-transaction question, so his retrial on that charge was appropriate.

Yates, however, contends that his rape conviction during the first trial operated as an implied acquittal on the charge of unlawful transaction with a minor. To support his argument, he cites *Green v. United States*, 355 U.S. 184, 190 (1957). In *Green*, the United States Supreme Court held that conviction of one offense operates, in some circumstances, as an implied acquittal of another. *Id* at 214. However, Yates's case is distinguishable from *Green* in that Green was originally convicted of the lesser offense of second-degree murder—the United States Supreme Court held, then, that he could not be subsequently tried for the greater offense of first-degree murder. Here, unlawful transaction with a minor was an alternative offense on which the jury could have reached a conclusion, but did not. "[T]he concept of acquittal by implication climbs up the ladder, not down." *McGinnis v. Wine*, 959 S.W.2d 437, 439 (Ky. 1998).

"The established test for determining whether a trial court's ruling constitutes an acquittal depends 'on whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Walker v. Commonwealth*, 288 S.W.3d 729, 743 (Ky. 2009) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)). As the United State Supreme Court held in *Martin*

16

*Linen*, a trial court's determination of the sufficiency of the evidence resolves the factual elements of the offense charged. 430 U.S. at 571–72. Here, in contrast, the trial court made no findings of fact and did not discuss the sufficiency of the evidence. "Both procedural dismissals and substantive rulings result in an early end to trial, but . . . the double jeopardy consequences of each differ." *Evans v. Michigan*, 568 U.S. 313, 319 (2013) (citing *United States v. Scott*, 437 U.S. 82, 91 (1978)). "[A] merits-related ruling concludes proceedings absolutely." *Id.* "In contrast, a 'termination of the proceedings against [a defendant] on a basis unrelated to factual guilt or innocence of the offence of which he is accused,' . . . *i.e.*, some procedural ground, does not pose the same concerns, because no expectation of finality attaches to a properly granted mistrial." *Id.* at 319–20 (quoting *Scott*, 437 U.S. at 98–99).

Because the jury did not make a finding on unlawful transaction with a minor, the trial court's acquittal, whether in error or not, was a procedural dismissal—not a substantive ruling. Because it subsequently set that procedural dismissal aside, Yates's reindictment on unlawful transaction with a minor was not barred by double jeopardy.

### D. Double Jeopardy—Indictments for Both Unlawful Transaction with a Minor and Sexual Abuse

Yates next argues that being charged with both unlawful transaction with a minor and sexual abuse also violated the constitutional proscription against double jeopardy. He contends that both charges were based on the same conduct, and [u]nder both the U.S. Constitution and the Kentucky

Constitution, double jeopardy prohibits multiple punishments for the same offense. *See United States v. Halper*, 490 U.S. 435, 448-49 (1989); *see also Hourigan v. Commonwealth*, 962 S.W.2d 860, 862 (Ky. 1998). He concedes that he did not adequately preserve this issue and asks this Court for palpable-error review. *See* RCr 10.26.

This Court adopted what is known as the "the *Blockburger* test" to resolve double-jeopardy claims arising from multiple offenses. *See Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996). In *Blockburger v. United States*, 284 U.S. 299 (1932), the United States Supreme Court held that "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304; *see also Burge*, 947 S.W.2d at 809.

Yates, however, contends that this Court departed from *Burge* and *Blockburger* in *Hall v. Commonwealth*. 337 S.W.3d 595 (Ky. 2011). There, we rejected Hall's request for a "strict same-elements test" in favor of a facts-based approach. *Id.* at 598. But we utilized that test to determine if a jury can be instructed on lesser-included offenses—not for double-jeopardy purposes. *Id.* at 607. In fact, we expressly limited our facts-based approach to "determining whether a trial court can properly instruct a jury on an uncharged offense as a lesser-include offense of a charged offense." *Id.*

Furthermore, as the Commonwealth notes, we have applied a strict statutory-elements approach for double-jeopardy purposes on many occasions

18

since *Hall.* *See, e.g., Early v. Commonwealth,* 470 S.W.3d 729, 737 (Ky. 2015); *Biederman v. Commonwealth,* 434 S.W.3d 40, 43 (Ky. 2014). Yates's argument that we have departed from *Burge* is misplaced.

"A person is guilty of sexual abuse in the first degree when being twenty-one (21) years old or more, he or she subjects another person who is less than sixteen (16) years old to sexual contact . . . ." KRS 510.110(1)(c)(1). "A person is guilty of unlawful transaction with a minor in the first degree when he or she knowingly induces, assists, or causes a minor to engage in . . . [i]llegal sexual activity." KRS 534.060(1).

Each requires an element of proof that the other does not. The unlawful-transaction statute requires an element of proof that is not found in the sexual-abuse statute: proof that the defendant induced, assisted, or caused the minor to engage in the act. The sexual-abuse statute, on the other hand, requires an element of proof not found in the unlawful-transaction statute: proof that the defendant is twenty-one years or older and that the victim is less than sixteen years old. Applying the *Blockburger* test, Yates was not subjected to double jeopardy by being convicted of both crimes.

Additionally, Yates similarly argues that the sexual-abuse and unlawful-transaction instructions violated his right to be free from double jeopardy because the trial court did not properly differentiate the act identified as sexual abuse from the act identified as unlawful transaction with a minor. This claim is unpreserved as well, and Yates requests palpable-error review.

19

The *Blockburger* test also provides the answer here; and that answer is also contrary to Yates's position. "If the legislature wants to impose multiple punishment for the same offense, it may do so." *McNeil v. Commonwealth*, 468 S.W.3d 858, 866-67 (Ky. 2015) (citing *Garrett v. United States*, 471 U.S. 773 (1985)). The trial court did not err in so instructing the jury.

**E. Vouching Testimony**

During trial, Sally testified that when she first told her mother about Yates's actions, her mother did not believe her. Later, she testified, her mother began believing her. When Sally's mother took the stand, the Commonwealth asked, "Do you believe her now?" She answered, "I do." Yates did not object to this exchange and again asks for palpable-error review. RCr 10.26.

Yates is correct that when a witness vouches for another witness, that testimony "remove[s] the jury from its historic function of assessing credibility" and is error. *Newkirk v. Commonwealth*, 937 S.W.2d 690, 696 (Ky. 1996). However, no manifest injustice arose from Sally's or her mother's testimony. "[I]f upon consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonpredjudicial." *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003) (internal citation omitted).

There is no substantial possibility that the result would have been any different had Sally's mother not vouched for Sally's credibility. At trial, Sally testified to the graphic nature of Yates's sexual assault. That information was the same information she gave to the police following the incident, and the

police corroborated that information by locating the sex toy that Yates used on her precisely where she told them it would be. The jury also heard that Yates's computer password was "Toriistight"—Tori being Sally's nickname. The improper vouching testimony paled in comparison to the compelling evidence of Yates's guilt. Although Sally's mother's testimony vouching for Sally's veracity was error, that error was harmless and certainly not palpable.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Fulton Circuit Court in this matter is affirmed in part and reversed in part. We affirm Yates's convictions and corresponding sentences totaling twenty-five years for unlawful transaction with a minor and sexual abuse, and remand to the trial court to dismiss his convictions of incest, use of a minor in a sexual performance, and unlawful imprisonment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR THE COMMONWEALTH:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General

21