RENDERED: JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0113-MR

DECLAN J. MCAULEY                                                     APPELLANT


v.          APPEAL FROM OLDHAM CIRCUIT COURT
            HONORABLE JERRY CROSBY, II, JUDGE
            ACTION NO. 18-CR-00184


COMMONWEALTH OF KENTUCKY                                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, ECKERLE, AND L. JONES, JUDGES.

ECKERLE, JUDGE: Appellant, Declan J. McAuley ("McAuley"), seeks review of a judgment of the Oldham Circuit Court sentencing him to a total of 12-years' imprisonment after a jury found him guilty of two counts of first-degree unlawful transaction with a minor, use of a minor in a sexual performance, three counts of third-degree sodomy, complicity to first-degree sexual abuse, tampering with physical evidence, and possession of matter portraying a sexual performance by a minor. We affirm.

## I. Factual and Procedural History

McAuley and his wife operated a dance studio, where Victim[1] was a student of dance. Eventually, Victim also taught dance classes at the studio. It is uncontested that Victim was 17 years old at the time of the events in question. McAuley did not teach dance lessons but handled the studio's business affairs and had business cards referring to himself as the studio's executive director.

After Victim alleged that she had engaged in sexual conduct with McAuley, an Oldham County grand jury indicted McAuley for eight counts of unlawful transaction with a minor in the first degree, six counts of use of a minor in a sexual performance, eight counts of sodomy in the third degree, rape in the third degree, sexual abuse in the first degree, complicity to sexual abuse in the first degree, and tampering with physical evidence.

In pretrial proceedings, the Commonwealth dismissed many of those charges, and the Trial Court denied McAuley's motion to declare Kentucky Revised Statute ("KRS") 532.045 unconstitutional. That statute, which will be discussed below, defines the types of persons and roles of those who occupy a *position of authority* or *position of special trust*. As it pertains here, a person holding such a position may commit certain offenses, such as sodomy in the third

---

[1] Though she is above the age of majority now, we identify her as "Victim" to protect her privacy. She was a minor at the time of the relevant, underlying events.

degree (KRS 510.090(1)(d)), against a 17-year-old minor[2] even though the age of consent in Kentucky generally is 16. *See* KRS 510.020(3)(a). The Trial Court concluded that the issue of whether McAuley held one of those positions in relation to Victim was a factual question for the jury to resolve. *Caldwell v. Commonwealth*, 554 S.W.3d 874, 876 (Ky. App. 2018) ("The determination of whether Caldwell's relationship with the victim amounted to a position of special authority or trust with the victim was a question of fact, and therefore a matter for the jury to determine.").

The charges against McAuley that the Trial Court had not dismissed eventually proceeded to a multi-day jury trial. Victim testified that, during a trip to England, McAuley began speaking with her about sexual matters and asked her if she wanted to watch him and his wife have sex. Victim agreed to do so. Victim then began spending some weekends at McAuley's home, purportedly to learn more about the business side of the dance studio. According to Victim, she engaged in sexual conduct with both McAuley and his wife at their home.

Victim testified about five sexual encounters. On one occasion, Victim alleged that McAuley dressed her in a corset, then manually and orally stimulated his wife's vagina while Victim watched, and then McAuley induced

---

[2] KRS 2.015 provides that, with limited exceptions not at issue here, "[p]ersons of the age of eighteen (18) years are of the age of majority for all purposes in this Commonwealth . . . ."

-3-

Victim to perform similar acts on his wife. On another occasion, McAuley gave a massage to both Victim and his wife on a bed. During the massage, McAuley inserted his fingers into Victim's vagina. On a third occasion, Victim was in bed with McAuley and his wife, and McAuley inserted his fingers into Victim's vagina and performed oral sex on her. Victim alleges that McAuley tried to insert his penis into her vagina but stopped when Victim said she did not want him to do so. McAuley and his wife then had sex next to a crying Victim.

The final two incidents related by Victim occurred on the same day. In the first, McAuley blindfolded Victim and then performed oral sex on her and inserted his fingers into her vagina. At one point, a blindfolded Victim felt more pressure in her vaginal area, but McAuley assured her he was only using his fingers. McAuley then encouraged Victim to perform oral sex on him, which she did. Later that day, McAuley had Victim perform oral sex on him a second time, while his wife was present.

During the trial, the Trial Court held a roughly two-hour conference about potential jury instructions with the parties and outside the jury's presence. The main point of the lengthy conference was to ascertain the particular acts that formed the basis of each specific charge against McAuley. The jury instructions were obviously still being drafted during the conference and unquestionably were not yet in their final form. During the conference, which at times was very

informal, the Trial Court accurately cautioned the parties that under Kentucky law, the final instructions must contain identifying information to enable the jury to ascertain the particular, alleged conduct that formed the basis of each count of the same offense.

As our Supreme Court has held in this regard:

We again instruct the bench and bar of the Commonwealth that in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred.

*Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008). Despite the Trial Court's warnings, the final jury instructions it gave did not expressly comply with *Harp*.

The Trial Court submitted the following charges to the jury: four counts of unlawful transaction with a minor in the first degree; two counts of use of a minor in a sexual performance; three counts of sodomy in the first degree; one count of rape in the third degree; one count of complicity to sexual abuse in the first degree; one count of tampering with physical evidence; and one count of possession of matter portraying a sexual performance by a minor. The jury acquitted McAuley of two counts of unlawful transaction with a minor, one count of use of a minor in a sexual performance, and rape in the third degree, but found

-5-

him guilty of the remaining charges and recommended a total sentence of 12 years'

imprisonment.[3]  The Trial Court sentenced McAuley in accordance with the jury's

recommendation.  He then filed this appeal.

## II.  Analysis

### A.  Issues Presented

McAuley's main arguments are that the jury instructions denied his

right to a unanimous verdict; he was subjected to double jeopardy; and the *position*

---

[3] The jury plainly found McAuley guilty of possession of a matter portraying a sexual performance of a minor, for which it recommended a sentence of one year of imprisonment.  *See* Trial Court Record ("R.") at p. 220, 231.  However, Indictment No. 18-CR-00184, whose record is the only one before us, did not charge McAuley with committing that offense.  R. at 11-24.

McAuley states in his brief that the Commonwealth added the possession of matter portraying a sexual performance by a minor charge "on the eve of trial . . . ."  Appellant's Brief, p. 2.  However, the page of the record cited by McAuley states only that the Commonwealth had dismissed 13 charges and does not specifically mention the addition of any charges.  *See* R. at 238.  Moreover, the final judgment in the record before us lists only Indictment No. 18-CR-00184 in its caption and does not sentence McAuley for the possession of matter portraying a sexual performance by a minor conviction.  R. at 259-262.

The Commonwealth's motion to dismiss some counts in Indictment No. 18-CR-00184 states that Indictment No. 23-CR-00043 had been "joined for trial . . . by agreement of the Parties."  R. at 238.  And the final judgment in Indictment No. 18-CR-00184 states the sentence for the convictions therein would run concurrently with a sentence imposed for charges contained in Indictment No. 23-CR-00043. R. at 261.  Therefore, it appears that the possession of matter portraying a sexual performance by a minor charge must have sprung from Indictment No. 23-CR-00043.

McAuley's notice of appeal states that he was appealing from convictions in both indictments.  But neither McAuley nor the Commonwealth addresses the fact that the record before us does not contain the record from Indictment No. 23-CR-00043.  The instructions submitted by the Trial Court to the jury also list only Indictment No. 18-CR-00184 in the caption, R. at 173, even though the offense of possession of matter portraying a sexual performance by a minor is included therein.  Moreover, the captions of all briefs submitted to us refer only to Indictment No. 18-CR-00184.  Although we would prefer to have the record of both indictments, we have concluded that it is not necessary for us to obtain the record in Indictment No. 23-CR-00043 in order to resolve the arguments made by McAuley.  We nonetheless caution counsel to pay attention to these types of details in future appeals.

*of authority* and *position of special trust* portions of KRS 510.090 and 510.110 are unconstitutionally vague and should not have been applied to him. We have considered the entirety of the parties' briefs but will address only "the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

### B. Challenged Statutory Provisions Are Not Unconstitutional

We shall begin with the constitutionality arguments, as a finding of unconstitutionality would automatically require reversing many of McAuley's convictions. McAuley tersely argues that he did not hold a *position of special trust* or *position of authority* vis-à-vis Victim; instead, he argues he was simply the spouse of a person who held such a position. Extrapolating from that flawed premise, McAuley contends the statutory definitions of *position of special trust* and *position of authority* are unconstitutionally vague and were unconstitutionally applied to him. We disagree.

Specifically, KRS 532.045 provides an inclusive definition:

(1) As used in this section:

(a) "Position of authority" means but is not limited to the position occupied by a biological parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational staff, or volunteer who is an adult, adult athletic manager, adult coach, teacher, classified school employee, certified school employee, counselor, staff, or volunteer for either a

residential treatment facility or a detention facility as defined in KRS 520.010(4), staff or volunteer with a youth services organization, religious leader, health-care provider, or employer;

(b) "Position of special trust" means a position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the minor[.]

The contours of McAuley's "as applied" challenges are hazy. As we construe his brief, his short and conclusory argument seems to be only that he did not hold a *position of special trust* or *position of authority* towards Victim.

We reject McAuley's argument because determining whether someone held that status is without reasonable question a fact question for the jury to resolve. And here, there was sufficient evidence from which a jury could have concluded – and did in fact conclude – that McAuley held one of those positions towards Victim. For example, Victim testified as to McAuley's frequent presence at the dance studio. The record contains a business card for McAuley listing him as the executive director of the dance studio. McAuley does not challenge the Commonwealth's assertion that another employee of the studio testified that McAuley was involved in her employment negotiations and discussed selling the studio to the employee. It is uncontested that Victim taught at the studio. Moreover, McAuley took Victim to England and, according to her testimony, let

her spend the weekends at his home so she could purportedly learn more about the business aspects of the studio.

Given the ample evidence of McAuley's extensive involvement in operating the dance studio where Victim went from being a student to teaching classes, the jury could reasonably have concluded that McAuley was at different times Victim's employer, adult youth leader, recreational staff, coach, or volunteer – all of which are positions listed as being sufficient to constitute a *position of authority* in KRS 532.045(1)(a).

Moreover, the list of specific roles listed in KRS 532.045(1) which cause a person to hold a *position of authority* or *position of special trust* is not exhaustive. And the jury is not required to select one. Consequently, we have held that a person described as a "family friend" could be deemed to have held a *position of special trust*. *Caldwell*, 554 S.W.3d at 876. Here, there was evidence that McAuley played a similar role in Victim's life, given that he took her to England, and she spent weekends at his home. In short, as there was evidence that McAuley held a *position of authority* or *position of special trust* regarding Victim, we reject his "as applied" challenge.

Indeed, almost 40 years ago we held that there was a rational basis to treat differently persons holding positions of special trust or authority who commit sex crimes against minors. *Owsley v. Commonwealth*, 743 S.W.2d 408, 410 (Ky.

App. 1987) ("We think there is a reasonable basis in the legislature's contrasting sexual offenders who are strangers or mere acquaintances of the abused child from those who abuse not only the child, but their advantageous position as a person who society teaches the child to regard as an adult role model.").

Turning to McAuley's vagueness argument, "[a] statute is unconstitutionally vague if those individuals who are affected by it cannot reasonably understand what the statute requires." *Tobar v. Commonwealth*, 284 S.W.3d 133, 135 (Ky. 2009). We perceive no such vagueness here.

The statutory language McAuley challenges is plain and unambiguous, despite his succinct claims to the contrary. In fact, McAuley's vagueness arguments are in direct opposition to the following holding from our Supreme Court:

> Contrary to Appellant's assertion, KRS 532.045 contains sufficient definiteness so that ordinary individuals may understand the conduct that has been prohibited by the legislature. Quite simply, the definitions of persons in positions of special authority and special trust utilize plain and ordinary language to lay out an extensive definition of who is included under the law. Further, the definition of person in a position of special authority addresses several nonexclusive categories of individuals who are in positions of special authority or special trust. It is clear from the language of the statute that the legislature undoubtedly intended to distinguish this type of relationship from one in which a minor is able to exercise free will without the influence of an adult role model.

-10-

. . .

> In conclusion, the statute contains sufficient definiteness to put those targeted by the statute on notice and does not encourage arbitrary or discriminatory enforcement. Thus, even if Appellant had standing to make his vagueness challenge, his argument would be without merit.

*Stinson v. Commonwealth*, 396 S.W.3d 900, 907-08 (Ky. 2013). We are bound by *Stinson*, Kentucky Rules of the Supreme Court ("SCR") 1.030(8)(a), and thus we summarily reject McAuley's constitutionality arguments.

### C. No Palpable Error in Jury Instructions

McAuley also argues that the Trial Court committed reversible error by giving identical instructions for each of three counts of unlawful transaction with a minor in the first degree. At the outset, we agree the instructions were improper because they did not include specific identifying conduct in their written form. However, McAuley did not preserve this error, and he has not demonstrated that he should be entitled to palpable error relief.

The three identical, unlawful-transaction-with-a-minor-in-the-first-degree instructions each provided as follows:

> You will find the Defendant guilty under this Instruction of the offense of Unlawful Transaction with a Minor, 1st Degree if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> > A. That in this county on or about and between August 11, 2017, and December 10, 2017, and

-11-

before the finding of the Indictment herein, Declan J. McAuley, knowingly induced, assisted, or caused [Victim] to engage in sexual contact when Defendant placed his fingers in [Victim's] vagina; **AND**

B. That Declan J. McAuley was a person in a position of authority or a position of special trust; **AND**

C. Declan J. McAuley came into contact with [Victim] as a result of that position of authority or a position of special trust; **AND**

D. That [Victim], date of birth, June 10, 2000, was less than eighteen (18) years of age; **AND**

E. That Declan J. McAuley knew [Victim] was less than eighteen (18) years of age.

R. at 184, 186, 188.

We reiterate that "in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp*, 266 S.W.3d at 818. These three written instructions do not comply with that simple holding, despite the Trial Court's oral instructions to the parties of the specification requirements at the jury instruction conference – instructions with which they did not comply.

In addition to failing to follow the Trial Court's direction, McAuley has also not shown he preserved the error. Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4) requires an appellant's opening brief to include "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." McAuley's opening brief states the issue "was preserved by the defendant's repeated objections during the jury instruction conference with the court. TR 10/9/23, 12:47:00 *et seq*." Appellant's Brief, p. 7. Even though McAuley acknowledges that the instruction conference lasted nearly two hours, he does not specify in either his opening or reply brief the precise point during that conference when he allegedly made the objections. Likewise, he does not provide the alleged objection's precise contents.

"Our rules requiring pinpoint citation to the record ensure that we base our decisions upon our own review of the record to establish the basis for factual assertions." *Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019). We concluded a preservation statement generically citing "to an eighty-four-page range of the record" had " no meaningful value" and thus was "woefully deficient and noncompliant." *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 377 (Ky. App. 2018).

Similarly here, McAuley's generic citation to only the beginning of a two-hour hearing is even more "woefully deficient" because it takes a reviewing court longer to scrutinize video from a two-hour hearing than it would to examine 84 pages of written materials. It is not our duty to sift through the record to determine preservation of an issue. *See, e.g.*, *Parker v. Commonwealth*, 291 S.W.3d 647, 676 (Ky. 2009). Moreover, and additionally, the jury instructions were plainly inchoate at the conference. A failure to object in a preliminary conference might be forgivable. But McAuley has further failed to show any reference to a later objection to the completed instructions. And, although it is not our duty to search, we could not find that he made an objection to the instructions before they were given by the Trial Court to the jury. McAuley was required to object to the instructions as given. As far as we can tell, he did not.

In sum, McAuley has not shown that he properly preserved the issue of identical instructions in his claim of lack of unanimity. "In all cases presenting an unpreserved error regarding a unanimous jury, the courts must plumb the depths of the proceeding and scrutinize the factual idiosyncrasies of the individual case. That includes a consideration of the weight of the evidence." *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023) (internal quotation marks and citations omitted). Thus, "[o]nly if, upon review, a court can conclude the error is so manifest, fundamental and unambiguous that it threatens the integrity of the

-14-

judicial process, will reversal be warranted.  It should be so egregious that it jumps off the page . . . and cries out for relief."  *Id.* (internal quotation marks and citations omitted).

Here, unlike *Harp* and other cases involving the giving of identical instructions, the jury acquitted McAuley of two of the three charges for unlawful transaction with a minor in the first degree.  Victim testified forthrightly that McAuley manually manipulated her vaginal area, and McAuley points to no contradictory testimony.  We have already explained that there was evidence by which a reasonable juror could have found that McAuley held a position of special trust or authority regarding Victim, and McAuley does not dispute the fact that Victim was less than 18 and that he knew her age.  In short, there plainly was sufficient evidence to support the jury finding McAuley guilty of the one count of unlawful transaction with a minor charge from which he now appeals.

McAuley had multiple opportunities to raise an issue about the jury instructions.  He failed.  Victim described the three separate acts in detail.  The jury instructions given were "bare bones," as required.  In its closing, the Commonwealth cited to each of the three instances in detail that supported each instruction.  And the jury acquitted McAuley of all but one count.  Thus, we cannot find that the error probably (and not possibly) affected the result.  While we do not

condone the giving of identical instructions, the unpreserved error does not meet the high bar of necessitating reversal under all of the circumstances of this case.

Consequently, in a palpable-error-only review, which we must undertake solely because of McAuley's failure to preserve alleged errors, we can easily determine that there was in fact unanimity of the jurors as to the three charges for unlawful transaction with a minor for which the Trial Court gave identical instructions since the jury only convicted McAuley on one charge while acquitting him of the other two. Moreover, McAuley cites no evidence directly contradicting Victim's testimony that McAuley engaged in conduct sufficient to support the statutory elements of the conviction for unlawful transaction with a minor in the first degree. As a result, we conclude that the regrettable instructional errors here are not so egregious that they threaten the integrity of the judicial process. *Johnson*, 676 S.W.3d at 417.[4] And we remind counsel that if they think

---

[4] The Commonwealth argues that it, essentially, corrected the instructional errors in its closing argument. However, our Supreme Court has rejected the premise that an attorney's argument may correct erroneous jury instructions. *See Harp*, 266 S.W.3d at 820.

Also, our review of the record revealed that two of the three sodomy counts for which McAuley was convicted were substantively identical. *See* R. at 196 and 198. Those instructions each required the jury to find that Victim placed her mouth on McAuley's penis. Each also required the jury to find that Victim was under 18, that McAuley was in a position of authority or special trust, and that he came into contact with Victim because he held that status.

The only difference between the two instructions is that the instruction for Count VIII states that the jury had to find McAuley "engaged in oral sex with [Victim] when [Victim] placed her mouth on his penis[,]" R. at 196, while the instruction for Count IX states the jury had to find McAuley "engaged in Deviate Sexual Intercourse when she placed her mouth on his penis[.]" R. at 198. There is no explanation on the face of the record why one instruction used the colloquial term "oral sex" while another used the statutory term "deviate sexual intercourse" to describe the same alleged sexual conduct. Better practice would have been to have used the

the error is obvious, they should lodge at least one clear objection on the record and point to it, which was not done here. If counsel here had done so, our ruling might well have been different.

### D. No Double Jeopardy

McAuley also argues that his convictions violate double jeopardy principles, namely the constitutional prohibition against "multiple punishments for the same offense." *Yates v. Commonwealth*, 539 S.W.3d 654, 665 (Ky. 2018). However, once again McAuley has failed to show adequately where he preserved his double jeopardy arguments for appellate review.

As before, McAuley states he preserved the arguments via "objections during the jury instructions conference and motions for directed verdict."

---

exact statutory language, as "instructions in criminal cases should conform to the language of the statute." *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky. 2006). Regardless, Victim's placing her mouth on McAuley's penis meets the statutory definition of *deviate sexual intercourse* upon which these sodomy convictions were based. *See* KRS 510.010(1) ("'Deviate sexual intercourse' means any act of sexual gratification involving the sex organs of one person and the mouth . . . of another . . . ."); KRS 510.090(1)(d) (providing that a person commits sodomy in the third degree when "[b]eing a person in a position of authority or position of special trust . . . he or she engages in deviate sexual intercourse with a minor less than eighteen (18) years old with whom he or she comes into contact as a result of that position"). Also, though better practice would have been to have specifically named the alleged victim, in context, Victim was obviously the "she" referred to in the instruction for Count IX.

For reasons to which we are not privy, McAuley does not challenge the two sodomy instructions in his briefs. Thus, we decline to explore this issue in depth on our own motion. Given Victim's testimony that she twice sodomized McAuley (once when his wife was present and once when she was not), we decline to conclude that any error is so shocking, obvious, and jurisprudentially intolerable that McAuley is entitled to *sua sponte* palpable error relief.

-17-

Appellant's Brief, p. 10. And as before, the same, generic citation to the beginning of the same lengthy hearing is insufficient. McAuley also does not cite specifically to any specific point during the multi-day trial that he allegedly moved for a directed verdict or the manner in which that undesignated motion in an undesignated time raised the issue of double jeopardy. Therefore, as before, we conclude McAuley has not preserved his arguments.

Nonetheless, "under our longstanding rule, double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court." *Terry v. Commonwealth*, 253 S.W.3d 466, 470 (Ky. 2007). "[D]ouble jeopardy violations can be addressed as palpable error because the nature of such errors is to create manifest injustice. Presentation of such errors to the trial court, while perhaps preferable, is not required." *Cardine v. Commonwealth*, 283 S.W.3d 641, 652 (Ky. 2009). In other words, a double jeopardy violation would be a palpable error. Thus, we shall undertake the review of McAuley's double jeopardy arguments under the aforementioned palpable error standards even though he failed to preserve them.

Our Supreme Court has explained the circumstances under which a conviction for multiple offenses can constitute double jeopardy as follows:

> In the seminal double jeopardy case of *Blockburger v. United States*, [284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)] the United States Supreme Court held that "where the same act or

> transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Kentucky uses the *Blockburger* double jeopardy test. So it is necessary to scrutinize closely and compare the offenses for which [a defendant] was convicted to determine if those convictions violate double jeopardy.

*Terry*, 253 S.W.3d at 470 (footnotes and citations omitted).

McAuley focuses on the jury instructions, arguing that "[n]one of the alleged acts constituting unlawful transaction with a minor are [sic] differentiated from the acts alleged to constitute sexual abuse, or use of a minor in a sexual performance, or sodomy in the third degree. The same allegedly illegal activity may constitute all of the convictions."[5] Appellant's Brief, p. 11-12. However, "[o]ur double jeopardy analysis focuses solely on 'whether each statute, on its face, contains a different element,' *Dixon v. Commonwealth*, 263 S.W.3d 583, 591 (Ky. 2008), and 'not the charging information, jury instruction, underlying proof needed, or the actual evidence presented at trial.' *Id.* at 591 n.30 (quoting 21 Am.Jur.2d *Criminal Law* § 302 (2008))." *Kelly v. Commonwealth*, 655 S.W.3d 154, 162 (Ky. 2022).

---

[5] Because McAuley does not raise a double jeopardy challenge to his conviction for possession of matter portraying a sexual performance by a minor, we will not analyze that charge.

In relevant part, a person commits unlawful transaction with a minor in the first degree if he "knowingly induces, assists, or causes a minor to engage in . . . [i]llegal sexual activity[.]" KRS 530.064(1)(a). As it pertains to this case, sexual abuse in the first degree occurs when "a person in a position of authority or position of special trust . . . subjects a minor who is less than eighteen (18) years old, with whom he or she comes into contact as a result of that position, to sexual contact . . . ." KRS 510.110(1)(d). *Sexual contact* under the facts at hand means "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the immediate area of a person's intimate parts, if that touching can be construed by a reasonable person as being done . . . [f]or the purpose of sexual arousal or gratification of either party[.]" KRS 510.010(7)(a).

Relevant here, a person commits sodomy in the third degree when "a person in a position of authority or position of special trust . . . engages in deviate sexual intercourse with a minor less than eighteen (18) years old with whom he or she comes into contact as a result of that position[.]" KRS 510.090(1)(d). For purposes of this case, *deviate sexual intercourse* means "any act of sexual gratification involving the sex organs of one person and the mouth . . . of another[.]" KRS 510.010(1).

Next, the offense of use of a minor in a sexual performance occurs when a person "employs, consents to, authorizes or induces a minor to engage in a

-20-

sexual performance." KRS 531.310(1). *Sexual performance* is circularly and unhelpfully defined as "any performance or part thereof which includes sexual conduct by a minor[.]" KRS 531.300(5). Under these facts, *sexual conduct by a minor* means "[a]cts of . . . lesbianism, . . . sexual intercourse, or deviate sexual intercourse, actual or simulated" or "[p]hysical contact with, or willful or intentional exhibition of the genitals[.]" KRS 531.300(4)(a)-(b). And *performance* is defined as "any play, motion picture, photograph, dance, or any other visual representation or computer-generated image exhibited before an audience[.]" KRS 531.300(2).

We need not delve into the granular details of each offense and examine all the possible differences between each. Instead, in the interests of judicial economy, we shall briefly note an element unique to each offense McAuley challenges.

First, only the use of a minor in a sexual performance statute contains the *performance* element. Next, only the unlawful transaction with a minor statute contains the "inducement" element (which required McAuley to have induced, assisted, or caused Victim to engage in illegal sexual activity). *Yates*, 539 S.W.3d at 665 ("The unlawful-transaction statute requires an element of proof that is not found in the sexual-abuse statute: proof that the defendant induced, assisted, or caused the minor to engage in the act.").

-21-

Turning to the sexual abuse conviction, though McAuley does not meaningfully address it, the jury actually convicted him of *complicity* to sexual abuse. Thus, the offense required McAuley to have solicited or engaged in a conspiracy with his wife. *See* KRS 502.020 (defining criminal complicity). The other offenses do not include a complicity element. Also, that charge alone required the jury to find that McAuley's wife also held a *position of authority* or *position of special trust* vis-à-vis Victim. Finally, only the sodomy charges required McAuley to have engaged in deviate sexual intercourse with Victim.[6]

We also note that the main authority McAuley relies on is an unpublished opinion. The Commonwealth also relies upon a different unpublished opinion in its brief. Unpublished opinions "are not binding precedent and citation of these opinions is disfavored." RAP 41(A). Because there is adequate binding authority to resolve McAuley's arguments, we decline to address the unpublished authority cited by the parties. *See* RAP 41(A)(3) (permitting citation to unpublished opinions when "there is no published opinion . . . that would adequately address the point of law argued by the party").

---

[6] Deviate sexual intercourse is among the possible methods of conduct included in the definition of *sexual conduct by a minor*, as that term pertains to the use of a minor in a sexual performance charge. However, there are many other listed activities in the statute constituting *sexual conduct by a minor* which would fit the testimony given by Victim, such as willful exhibition of genitals. Indeed, the jury acquitted McAuley of Count VI, which alleged he committed the offense of use of a minor in a sexual performance by inducing Victim to engage in deviate sexual intercourse, in the form of performing oral sex upon him while his wife watched.

In sum, each offense contains an element not found in the other offenses. "The *Blockburger* test . . . provides the answer here; and that answer is . . . contrary to [McAuley's] position. If the legislature wants to impose multiple punishment for the same offense, it may do so." *Yates*, 539 S.W.3d at 666 (internal quotation marks and citations omitted). We discern no palpable error and thus reject McAuley's unpreserved double jeopardy arguments.

### III.  Conclusion

For the foregoing reasons, the Oldham Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Michael L. Goodwin
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky